Clarence Dewayne OAKS, Petitioner,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.

No. 69–283–ORL–CIV.

United States District Court,
M. D. Florida,
Orlando Division.

June 2, 1970.

---

Morton J. Hanlon, Asst. Atty. Gen., Lakeland, Fla., for respondent.

Jerome J. Bornstein, Bornstein, Petree & Gluckman, Orlando, Fla., for petitioner.

## ORDER

GEORGE C. YOUNG, District Judge.

This cause comes before the Court for further consideration of the petition for writ of habeas corpus filed by Clarence Dewayne Oaks.

Petitioner was convicted in state court in 1966 of second degree murder upon a plea of guilty and was sentenced to imprisonment for twenty (20) years. Since 1968 he has filed three petitions in this Court seeking habeas corpus relief on the grounds that his plea of guilty was involuntary and that he was denied effective assistance of counsel. In each of the numerous times that this Court has previously dealt with petitioner's claims, they have been premature for consideration on the merits. Finally, however, petitioner has exhausted all available state remedies and this case has reached the point where it can be disposed of upon the merits.

The United States Supreme Court in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) has recently formulated new guidelines under the due process clause for the acceptance of guilty pleas in state courts.

*Boykin* arose out of a robbery in Alabama in 1966. The indigent defendant, charged with five counts of common law robbery, pleaded guilty to all counts three days after counsel was appointed for him. The record showed that the trial judge asked defendant no questions, and that the defendant did not address the Court. After the defendant's conviction was upheld by the Alabama courts, the United States Supreme Court granted certiorari and reversed on the grounds that the record failed to affirmatively show that the plea was intelligently and voluntarily entered.

As the Supreme Court noted, a plea of guilty involves the waiver of several federal constitutional rights which are applicable to the states:

(1) the privilege against compulsory self incrimination;

(2) the right to trial by jury; and

(3) the right to confront one's accusers.

The waiver of these rights, the Supreme Court stated, cannot be presumed from a silent record. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences."[1] 395 U.S. 244, 89 S.Ct. 1712.

Before attempting to determine the explicit standards required by *Boykin*, this Court must first resolve the question of whether the holding of that case is applicable to the case at bar.

One decision of the Fifth Circuit, Schnautz v. Beto, 416 F.2d 214, 215 (5th Cir. 1969), appeared to have answered the question of *Boykin's* applicability in the affirmative. There was no discussion in *Schnautz* regarding the effective date of *Boykin*, however, the defendant in that case pled guilty in state court on April 4, 1966 [prior to the date when

---

1. Justice Harlan in dissent commented that the majority in *Boykin* had in effect imposed "upon the States, as a matter of federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure." 395 U.S. 245, 89 S.Ct. 1713. Specific requirements under Rule 11 were recently formulated in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

Boykin pleaded guilty] and the Fifth Circuit held the plea invalid on the basis of *Boykin.*

According to the Court of Appeals, the record of the proceedings in *Schnautz* failed to reveal that the judge had questioned the defendant as to his understanding of the nature of the charge and the voluntariness of the plea. Commenting upon this, the Court stated:

" * * * We do not hold 'that the prophylactic procedures of Criminal Rule 11 are substantially applicable to the States as a matter of federal constitutional due process,' but we are persuaded that under the total circumstances here the trial judge should have interrogated Schnautz to make sure he had a full understanding of what the plea connoted and of its consequences. The record is wholly silent on this point and Boykin requires reversal." 416 F.2d 215.

The Court went on to note:

"The crucial issue is whether, under all the facts and circumstances, the plea was truly voluntary. The plea must be a genuine one by a defendant who understands the situation, his rights, and the consequences of his plea and is neither deceived nor coerced." 416 F.2d 216.

The Fifth Circuit appears to have taken a different position in Wade v. Wainwright, 420 F.2d 898 (5th Cir. 1969). There the Court stated, page 901:

"We do not at this time expressly determine that Boykin is to be given retroactive effect."

*Schnautz* was distinguished on the basis that factors other than the retroactivity issue were involved and that the question of *Boykin's* retroactive application did not appear to have been argued before the Court.

Since the Fifth Circuit has declined to determine whether or not *Boykin* is to be given retroactive effect, this Court will not attempt to resolve the question and will determine the issues raised in this petition on the basis of pre-*Boykin* law.

■ It is this Court's understanding of *Boykin* that the Supreme Court held in that case that a guilty plea must be set aside unless there is an affirmative showing on the record *before* the plea is accepted that the defendant had full understanding of what his plea connoted and what its consequences were. Prior to the *Boykin* decision it was still a requirement of a constitutionally acceptable plea that a defendant understand what his plea connoted and what its consequences were. However, it was not essential that such matters appear on the record prior to the time that the plea was accepted.

When petitioner in the case at bar entered his plea of guilty on January 31, 1966, the transcript reveals that the following colloquy occurred:

"THE COURT: State of Florida versus Clarence DeWayne Oaks. The Court understands that you have already been arraigned for this charge and tendered a plea. Are you ready for trial?

MR. MAYES: Your Honor, at this time the defendant is ready to change his plea from guilty of murder in the first degree to guilty of murder in the second degree.

MR. HOSEMANN: That plea is acceptable to the State.

THE COURT: You are Charles DeWayne Oaks and a plea has been tendered for you of guilty of the crime of murder in the second degree. Do you understand the significance of that plea?

MR. OAKS: I think I do, sir. I understand that I should admit that I did do it, but I don't feel, say, that I did know that I was doing it at this time.

THE COURT: Mr. Oaks, you don't have to say anything; that is one of the beautiful things about the country in which you are a citizen. That is, you are not called upon to receive

(sic) the defense on the trial of murder. The second degree, as I am sure your counsel has explained to you, or that is what you are indicating to me, that you felt, that at this time of killing you were of a depraved mind.

MR. OAKS: I don't remember, but I can accept second degree, wince (sic) I know she is gone and I evidently did it.

THE COURT: Let the plea be entered and the Court will order a P.S. I."

These proceedings standing alone would not meet constitutional standards, and if this case were governed by *Boykin* no further inquiry would be necessary. However, since *Boykin* is not controlling, this case was set for hearing and at such time testimony was taken of both petitioner and Howard Mayes, the attorney who represented petitioner in the state proceedings.

On the basis of the testimony adduced at the hearing this Court concludes that there is no merit to petitioner's contention that he was not adequately represented by his attorney. This Court further finds that prior to the time that petitioner entered his plea of guilty he understood the charge against him, that he had been advised of the sentence that was imposed, and that his plea was not—as he contended —induced by promises, threats or coercion. It appears from petitioner's testimony that he was aware that he was entitled to a jury trial, but it is not clear that he fully understood that by pleading guilty he was waiving his privilege against compulsory self incrimination and the right to confront his accusers. However, it is not necessary to reach these questions because of the deficiency of the proceedings in another respect.

Petitioner asserted at the time of his plea that he had no recollection of committing the offense charged. In this Court's opinion a defendant's alleged lack of memory would not in all cases act as a bar to the acceptance of a guilty plea. However, under such circumstances, the trial judge has the duty to determine that there was a factual basis for the plea from sources independent of petitioner's statements.

In this case no such inquiry took place, either at the time the plea was accepted or at the time of sentencing. Furthermore, the trial judge's findings entered after the conclusion of a Rule 1.850, 33 F.S.A., hearing state only with regard to the issue that *petitioner* was satisfied that he had committed the offense.

Absent a determination by the trial court that a factual basis for the plea existed, the plea cannot stand; it is therefore,

Ordered that the petition for writ of habeas corpus be granted unless within a period of ninety (90) days from date hereof the State of Florida elects to rearraign and try the petitioner if trial be required.