**Roosevelt WALKER, Petitioner,**

v.

**E. B. CALDWELL, Warden, Georgia State Prison, Successor to S. L. Smith, Respondent.**

Civ. A. No. 2573.

United States District Court,
M. D. Georgia,
Macon Division.

Oct. 7, 1971.

Joseph W. Popper, Jr., Macon, Ga., for petitioner.

Dorothy T. Beasley, Asst. Atty. Gen., Atlanta, Ga., for respondent.

BOOTLE, Chief Judge:

This case is before the court for the second time. Initially, petitioner sought a writ of habeas corpus from this court after having been denied a writ from the state courts. The petition was denied without a hearing because this court was of the opinion that the record established in the state habeas court was adequate to establish that the denial of relief by that court was proper. Furthermore, this court was of the opinion that petitioner had deliberately by-passed available state remedies in favor of bringing his action here. The Court of Appeals for the Fifth Circuit stating that "against the backdrop of this cause in which the claims of an indigent illiterate are denied without a hearing,

based upon a record which is supported only by uncrossed written interrogatories to his court-appointed attorney whose competency has been specifically attacked, the trial court should have held an independent hearing to determine whether there was any basis for federal habeas corpus relief", reversed and remanded with instructions for this court to hold an "adequate evidentiary hearing to permit Walker to develop his contentions that he was deprived of his constitutional rights in connection with his criminal conviction by the State of Georgia, and to accord Walker representation in connection with such hearing if that court should, in its discretion, determine that such representation is required by the interests of justice." Walker v. Smith, 5th Cir., 439 F.2d 392 (1971). Accordingly, this court appointed counsel to represent petitioner and an evidentiary hearing was held, in which petitioner, through counsel, availed himself of every opportunity to develop and present his case.[1]

Having carefully studied the record made at the hearing before this court and the record previously made, both in this court and in the state court, I have concluded, as previously, that petitioner was not deprived of any of his constitutional rights in the Superior Court of Baldwin County, where he was convicted and sentenced on valid pleas of guilty to the charges then pending against him.

To enable the court to more fully develop its conclusions it will be advantageous to briefly review all the evidence now before the court. Petitioner was convicted by the State of Georgia of ten separate charges of burglary and theft by taking for which he received consecutive three year sentences. At the same time he was also convicted of the misdemeanor of carrying an unlicensed, concealed pistol and received a concurrent six-month sentence. All convictions

1. Depositions were taken, upon notice of petitioner's trial court attorney, of the sheriff of Baldwin County, two of the sheriff's deputies involved in the arrest and conviction of petitioner, and the trial court judge. Petitioner's counsel cross examined at the deposition hearings. At the hearing Walker testified in his own behalf. All is now a matter of record before this court.

were based on pleas of guilty signed by petitioner's court appointed attorney, but not by petitioner (who was illiterate). Subsequent to his conviction and imprisonment petitioner brought an action for habeas corpus relief in the Superior Court of Tattnall County, Georgia in which he contended that his alleged waiver of his right to counsel at questioning and his right not to incriminate himself was involuntary, that he was denied a right to trial by jury, that he did not waive any of his federal constitutional rights, and that appointed counsel inadequately assisted him in his defense. At the state habeas corpus hearing, testifying in his own behalf, petitioner stated that the authorities questioned him for five days without counsel, that he had never seen his appointed counsel prior to his court appearance and then had only five minutes to talk with him before his plea was entered, that he asked his appointed counsel to plead him not guilty and to ask for a jury trial, that he did not wish to plead guilty but his attorney nevertheless plead him guilty, that he told the judge in open court that he was not pleading guilty because he was not guilty of any of the charges placed against him and on which he was convicted. Nevertheless, despite all his protestations, he was convicted, sentenced and subsequently imprisoned.

The state habeas judge, following a hearing, found that "none of the constitutional rights of the petitioner have been denied and that he is now serving legal sentences."[2]

Following denial of habeas corpus by the state court petitioner sought the writ from this court, making essentially the same allegations here as he did before the state court.[3] The writ was denied without a hearing, from which denial petitioner appealed. As previously stated, the Court of Appeals for the Fifth Circuit reversed and remanded for the purpose of holding an evidentiary hearing to more fully develop petitioner's contentions.

A hearing was held on July 26, 1971, at which petitioner, represented by able counsel, appeared and testified in his own behalf. The testimony of Sheriff Lingold, Deputies Hall and Freeman, Attorney Watts, and Judge Carpenter was before the court on deposition.

At this hearing petitioner's testimony in part was as follows. He talked to his lawyer for only five minutes before court, during which time his lawyer failed to inform him of the charges against him. (However, near the end of the hearing petitioner under questioning by the court did admit his attorney told him that there were eight charges pending against him). On direct examination petitioner denied that his lawyer had informed him what the possible consequences of a plea of guilty would be; however, again, on closer examination by the court petitioner stated that his lawyer had informed him that he could get "life". According to petitioner, his appointed lawyer refused to represent him in a jury trial, instead telling him that the best thing for petitioner to do would be to "go on down to Reidsville and learn some kind of trade." On being taken before the judge, the charges were read to petitioner after which he asserted

2. At the state hearing, the only evidence offered by the state, apart from that elicited from the petitioner on cross examination, was written interrogatories upon deposition propounded to petitioner's court appointed attorney, which were offered without objection from petitioner. Petitioner failed to avail himself of the procedures provided him by Georgia Civil Practice Act § 31 whereby he could have propounded cross interrogatories. As it now appears, from the record made before this court, petitioner was given notice on December 18, 1969 of the interrogatories pursuant to § 31 of the Civil Practice Act.

3. Although petitioner failed to perfect his appeal to the Georgia Supreme Court, as required by Georgia law, it was held that he did not deliberately by-pass his right to appeal from the denial of his state habeas corpus petition. Walker v. Smith, 439 F.2d 392 (5th Cir. 1971).

that he was not guilty and did not wish to plead guilty. Nevertheless, petitioner asserts that he was sentenced to 30 years.

At first petitioner asserted he was not guilty of any of the charges which had been placed against him, that he did not commit any act of burglary. But, later on being questioned by the court petitioner did admit that he committed one of the acts of burglary with which he had been charged and convicted, that is, he did unlawfully enter someone's residence and take therefrom a record player.

Petitioner did not allege or contend that he had been coerced into making the guilty plea, or that he had been induced to make the plea as a result of promises made to him. Rather, his sole assertion in this regard was that he did not enter a plea of guilty, nor did he authorize his lawyer to do so for him. There is no evidence in the record which would indicate that petitioner was in any way threatened or abused while in jail, other than his allegations that he was denied counsel and taken against his will to the courthouse to enter his plea.

During the course of the hearing this court was of the opinion that petitioner was evasive. As noted above, petitioner would testify to certain facts, but would later change his testimony. An apparently poor memory, improved considerably under close questioning, particularly after being confronted with facts which conflicted with his testimony. Review of the transcript of petitioner's testimony strengthens this initial impression.

At the conclusion of oral argument the court requested that counsel brief the question under what conditions, if any, can the State meet the proof requirements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) when the state court plea session record is silent.

In response petitioner asserts that under the *Boykin* rationale the absence of a formal trial court record, contemporaneously made, demonstrating that he intelligently and knowingly pleaded guilty vitiates any guilty pleas in his case.

After careful study of this question, I am convinced, as the state urges, that on a collateral attack all that the Constitution and *Boykin* require is that this Court be able to conclude that the record as it now exists, including the transcript, if any, made at the plea session, the record made at the state habeas corpus proceeding and the record made before this Court, conclusively establish that the guilty pleas of petitioner were in fact freely, voluntarily, and knowingly entered.

In *Boykin* the defendant pleaded guilty to common-law robbery and was given the death penalty. His conviction was affirmed on appeal to the Supreme Court of Alabama. On certiorari, the United States Supreme Court reversed on the grounds that the record did not disclose that the defendant voluntarily and understandingly entered his guilty plea. The Court stated that "In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 [77], we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. The record must show, *or there must be an allegation and evidence which show*, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' We think that *the same standard* must be applied to determining whether a guilty plea is voluntarily made." *Boykin*, 395 U.S. at 242, 89 S.Ct. at 1712, 23 L.Ed.2d at 279.[4] (Emphasis added).

---

4. Petitioner cites to the court cases from other jurisdictions which he asserts interprets *Boykin* as requiring a trial court transcript of the guilty plea. See in this regard Smith v. Cox, 435 F.2d 453 (4th Cir. 1970); French v. Henderson, 317 F. Supp. 25 (W.D.La.1970); Oaks v. Wainwright, 313 F.Supp. 828 (M.D.Fla.1970). Whether these cases so hold is not necessary to decide since this court has determined that such interpretation of *Boykin* is not justified.

The question is thus raised as to what was the *standard* adopted in Carnley v. Cochran? There the defendant had been convicted of the noncapital offenses of incest and assault in a lewd, lascivious, and indecent manner upon a female child under the age of 14. He was not afforded the assistance of counsel at trial. He obtained a provisional writ of habeas corpus from the Florida Supreme Court on a petition asserting that the failure to provide counsel deprived him of rights guaranteed by the fourteenth amendment. On the petition, the return, and the accused's reply, but without a hearing, the Florida Supreme Court denied the writ, imputing "to petitioner the waiver of the benefit of counsel on a ground stated in the court's opinion as follows: 'If the record shows that defendant did not have counsel . . ., it will be presumed that defendant waived the benefit of counsel . . . .' 123 So.2d at 251." *Carnley*, 369 U.S. at 513, 82 S.Ct. at 889, 8 L.Ed.2d at 75. On certiorari, the United States Supreme Court reversed. In reversing the denial of the writ of habeas corpus by the Florida Supreme Court, the Court stated, 369 U.S. at 515, 82 S.Ct. at 890, 8 L.Ed.2d at 77:

> "However, we recognized in Rice v. Olson (324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367) (which was likewise before the Supreme Court on certiorari from a denial of a writ of habeas corpus by the state court) that, although the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, the entry of the guilty plea might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right. We held that a hearing was required since the facts were in dispute. In the present case, however, there was no guilty plea, and the return to the writ does not allege an affirmative waiver. Therefore, there is no disputed fact question requiring a hearing. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

Further, "no such burden (the burden of establishing that the waiver of the right to counsel was not sufficiently understanding and voluntary) can be imposed upon an accused unless the record—*or a hearing*, where required—reveals his affirmative acquiescence." *Id.*, 369 U.S. at 516, 82 S.Ct. at 890, 8 L.Ed.2d at 78. (Emphasis added).

Clearly, *Carnley* did not require that the waiver of counsel must appear on the trial court record, but rather recognized that a later habeas corpus hearing could make a record from which it could be conclusively established that a waiver was, in fact, voluntary and understanding. In Rice v. Olson, cited in *Carnley*, the record was silent as to whether the defendant had requested that counsel be appointed to assist him in making a plea of guilty; however, this silence did not, in and of itself, require reversal. Rather the Court held that the plea of guilty raised a fact issue as to whether the accused did intelligently and understandingly waive his constitutional right to counsel. Therefore, a hearing was required to resolve this issue. In *Carnley*, the Court specifically recognized that under the proper circumstances a hearing would be proper where the record was silent. In that case, however, the Court held that since there was no allegation of an affirmative waiver and no guilty plea, there was no disputed fact question requiring a hearing. "The record must show, *or there must be an allegation and evidence which show*, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley*, 369 U.S. at 516, 82

S.Ct. at 890, 8 L.Ed.2d at 77. (Emphasis added). Had there been an affirmative allegation that the defendant had waived the right to counsel there would be a factual question requiring a hearing. Likewise, a guilty plea would have created a factual question requiring a hearing. Thus, in stating that "presuming waiver from a silent record is impermissible", the *Carnley* Court did not rule that whenever a trial court record is silent, the plea could not stand.

▮ The Supreme Court in Boykin v. Alabama specifically adopted the standard established in Carnley v. Cochran for determining whether the accused intelligently and understandingly waived the right to counsel to determine whether a guilty plea is voluntarily made. There is no indication in *Boykin* that the Court in any manner limited the procedures used in *Carnley* for establishing a record adequate to make the required determination. Therefore, it can only be concluded that in situations where the question of the voluntariness of a guilty plea is raised in a habeas corpus action [5] the court is authorized and should either hold an evidentiary hearing to establish a record whereby it can be determined that a plea of guilty was freely and voluntarily entered or else rely on a record established in a state habeas corpus hearing, which record is adequate under the provisions of 28 U.S.C.A. § 2254.

That a silent trial court record does not automatically require setting aside of the conviction obtained on a plea of guilty has been explicitly recognized by our Circuit Court of Appeals. In Schnautz v. Beto, 416 F.2d 214, 215 (5th Cir. 1969), the court stated that "We do

not hold 'that the prophylactic procedures of Criminal Rule 11 are substantially applicable to the States as a matter of federal constitutional due process' [2]. . . .

"[2]. The Supreme Court, in *Boykin*, vacated the judgment on the ground that the record failed to adequately show an intelligent and knowing plea of guilty. Justices Harlan and Black argued in their dissent, '[t]he Court thus in effect fastens upon the States, as a matter of federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure.' "

In 1970 the case of Dennis v. Henderson, 435 F.2d 1288 (5th Cir. 1970) was before the court. The habeas corpus petitioner apparently sought succor from the belief that Boykin required a formal state trial court transcript. In rejecting this contention the court in footnote 1 stated that "Appellant Dennis, unlike Boykin, had a full post-conviction evidentiary hearing on the basis of which his plea was held to have been understandingly and voluntarily made by him." Id. at 1289. In Nobles v. Beto, 439 F.2d 1001, 1002 (5th Cir. 1971), the court cited Dennis v. Henderson, *supra*, in denying a state habeas applicant relief (on his claim involving the lack of a trial court transcript) stating: "Even if *Boykin* were to be held to have retroactive effect, it is inapplicable in this case because the state post-conviction hearing resulted in a valid conclusion that the *guilty plea was in fact voluntarily and intelligently made.*" To the same effect see also Mountjoy v. Swenson, 306 F.Supp. 379 (W.D.Mo.1969); Meller v. Swenson, 309 F.Supp. 519 (W. D.Mo.1969).

5. Boykin v. Alabama was a case wherein the writ of certiorari to the United States Supreme Court followed the failure of the defendant to obtain relief in the State Supreme Court on a direct appeal from his conviction. In cases on direct appeal there is no clear opportunity, as in cases where a petition for a writ of habeas corpus is involved, for collateral hearings whereby additional evidence is adduced. Only the record as made in the trial court is considered and when that record is silent no other avenue is readily available whereby the fact of voluntariness and understanding can be established.

Therefore, if, on the record as it now exists, it affirmatively appears that petitioner's pleas of guilty were voluntary and intelligently made, the lack of a trial court transcript will not be fatal error. If the guilty plea was valid, then all non-jurisdictional defects are waived; thus, petitioner must prevail on his attack on the guilty plea or not at all.

■ Under all the circumstances of this case we find that petitioner's plea was voluntary and intelligently made, and further that at the time the plea was entered he knew what the possible consequences of a guilty plea were.

Although Attorney Watts, quite understandably, was unable to recall in detail the events which transpired on the morning of August 29, 1969, when petitioner herein entered his pleas of guilty, he did recite in detail his usual practice in these matters. Crediting his testimony, as we do, it affirmatively appears that Watts determined that petitioner desired to enter a plea to the charges and that the plea to be entered was voluntary, and that Watts explained to petitioner what the possible consequences of a plea would be. In this regard Watts stated in answer to a question by respondent as to whether he was satisfied that petitioner knew specifically what charges were brought against him that:

"I am satisfied that he knew specifically that, and while I can't say that I remember all of the details of this case two years ago since I do handle so many of them on a gratuity basis, but I do know that routinely I explain to anyone that has expressed a desire to enter a plea, explain to him that he does have the right to be tried by a jury if he so desires, or that if he wishes to enter a plea of guilty, that he can make any statement to the court that he desires, that he can have anyone else speak in his behalf, and I talk to them in regard to their educational background, family status, and previous record to be able to bring out any extenuating circumstances in their

behalf to state to the court." Deposition of James M. Watts, Jr., p. 4.

Watts also stated that he was certain that petitioner knew what the possible punishment was and that he knew that petitioner understood that he had a right to trial by jury.

"Q. Were you satisfied that he understood what the consequences of pleading guilty would be?

"A. Yes. I explained to him the number of counts for burglary and the number of other charges and told him that he could get 20 years for each count of burglary, and I am not certain but I think it is 10 years for theft by taking. I don't recall offhand the punishment for the other two.

"Q. Did he then authorize you to enter a plea on his behalf?

"A. That's right.

"Q. A plea of guilty to all of these charges?

"A. That's right. He was present—In fact, they are always present when I sign the plea of guilty for them. Before I sign it, I always have them stand by and I say 'Now you do want me to enter the plea of guilty for you?' I always ask that before every one that I ever enter a plea for.

"Q. Was that done in this case?

"A. That was done in this case." (Deposition of James M. Watts, Jr., pp. 7, 8.)

The trial judge who accepted petitioner's pleas, Honorable George S. Carpenter, likewise could not recall petitioner's case in detail; however, he did testify as to his general practice whenever an accused wishes to enter a guilty plea. He stated that:

"The matter came on, and while it has been almost two years, and handling cases in eight counties in the Circuit, and there are a great many of them, I cannot remember what happens in each case, and I wouldn't attempt to say. But knowing my practice for a

long time, I have always taken pains to see that defendants were properly represented. I realize the seriousness of that. Many times, after they have wanted to plead, there may be some intimation that they probably don't, well, I stop it right then. I don't ever take a plea unless I am satisfied that the plea is freely and voluntarily done and with the advice of counsel."

The only evidence to rebut the affirmative showing of respondent that petitioner's pleas were in fact voluntarily and intelligently given is the testimony of petitioner. As previously stated, this testimony was evasive and often contradictory. This court has carefully studied the transcript of petitioner's testimony. This study indicates that this testimony cannot be credited. Furthermore, before the state habeas court and initially before this court petitioner strenuously maintained that he was not guilty and had not done anything to plead guilty for. However, as it developed, he admitted later that he was guilty of one of the charges, that he had committed one act of burglary.

To credit the testimony of petitioner would require that we discredit the testimony of a member of the bar, the Sheriff of Baldwin County along with two of his deputies and of Judge Carpenter. Judge Carpenter affirmatively stated that he would never countenance an involuntary plea of guilty. I happen to know Judge Carpenter and I know that he would not do so even if he had not so testified. It is unthinkable that this experienced, capable and conscientious Judge would sentence a man to 30 years after that man told him that he was not guilty of the charges against him. Nor can it be presumed that a member of the bar would plead a man guilty without authority to do so and over his protestations of innocence. To make a finding that the events did transpire as alleged by petitioner would required a much stronger showing than we have here.

The petition for writ of habeas corpus is denied.