**Roosevelt WALKER, Petitioner-Appellant,**

v.

**E. B. CALDWELL, Warden, Georgia State Prison, Respondent-Appellee.**

No. 71–3253.

United States Court of Appeals, Fifth Circuit.

April 3, 1973.

**214**

Joseph W. Popper, Jr., Macon, Ga., for petitioner-appellant.

Arthur K. Bolton, Atty. Gen., Dorothy T. Beasley, Harold N. Hill, Courtney Wilder Stanton, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and BELL and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Roosevelt Walker, a Georgia state prisoner, appeals from the district court's denial of his petition for writ of habeas corpus. We are required here once again to examine the minimum standard of duty imposed upon appointed counsel in a felony case where the defendant pleads guilty. After careful review of the record, the briefs and the contentions of the parties at oral argument we reverse.

Walker was arrested in Baldwin County, Georgia, on August 23, 1969, and charged in eleven separate indictments with seven counts of burglary (Criminal Code of Georgia, 1969, § 26–1601), three counts of theft by taking (Criminal Code of Georgia, 1969, § 26–1802), and one count of carrying an unlicensed, concealed pistol. On Friday, August 29, 1969, Walker attended by court-appointed counsel pled guilty in Georgia state court to each of the charges against him. He was sentenced to three years confinement on each of the seven charges of burglary and on each of the three counts of theft by taking, all sentences to be served consecutively, a total of thirty years imprisonment. On the charge of carrying an unlicensed, concealed pistol, Walker was sentenced to six months in a public work camp, this sentence to be served concurrently.

Subsequent to his imprisonment, Walker petitioned the state courts of Georgia for a writ of habeas corpus contending, inter alia, that he was at all times innocent of the charges against him, that he had never expressed a desire to plead guilty, that he had been denied effective assistance of counsel at the time of his pleas, and that therefore his pleas of guilty were not knowingly, voluntarily and understandingly made. After a hearing, the state court denied relief.

Walker then sought habeas corpus relief from the Middle District of Georgia federal district court. On the basis of an insufficient state court record, that court denied relief without an evidentiary hearing. Walker v. Smith, 5 Cir. 1971, 439 F.2d 392. We reversed, and directed the district court to conduct an adequate evidentiary hearing to permit Walker to develop his contentions that he was deprived of his constitutional rights in connection with his criminal conviction by the State of Georgia, and to accord Walker representation in connection with such hearing if that court should, in its discretion, determine that such representation was required in the interests of justice.

The hearing was held on July 26, 1971. Walker testified. Deposition testimony was introduced from the Sheriff of Baldwin County, two of his deputies, the judge of the state court who accepted Walker's pleas and sentenced him, and from Walker's appointed counsel. Petitioner's counsel attended and cross-examined at the depositions. On October 7; 1971, the district court again denied habeas corpus relief. Walker v. Caldwell, M.D.Ga.1971, 335 F.Supp. 308. This appeal followed.

At the time of Walker's convictions, it was the practice to take all guilty pleas on Friday mornings in the Baldwin Su-

perior Court. On Friday, August 29, 1969, Walker was transported to the court, apparently on the basis of an indication to the Sheriff or one of his deputies that he wished to plead guilty. Walker had not as yet discussed his case with any member of the bar.

The Judge of the Superior Court, Judge George S. Carpenter, appointed James M. Watts, Jr., an attorney, to represent Walker and his co-defendants at the proceeding. Watts, whose office adjoins the courtroom, handled roughly ninety per cent of the appointed cases in this court, without fee. He represented approximately 500 defendants each year, and usually handled about ten cases each plea day.

Watts talked to Walker for a very brief period of time. Walker testified that Watts only talked to him for five minutes. Watts, although unable to remember the specific incidents of his representation of Walker, testified in the court below by deposition that it was his usual practice to spend from ten to thirty minutes on each case on an average plea day. It is uncontradicted however, that on the morning in question Watts did not seek to investigate the facts of the charges against Walker, talk to any witnesses, explore the possibility of a motion to suppress, or engage in any plea bargaining. *Watts testified below that he follows a substantially different*

*practice when representing fee clients rather than appointed clients.* Watts also testified that he only determined to his satisfaction that Walker's pleas were voluntarily and understandingly made, and did not advise Walker whether to plead guilty.

After his brief discussion with Walker, Watts pleaded Walker guilty to all charges against him. Walker is illiterate and Watts signed the pleas of guilty. No record was made of the plea proceedings in the state court, other than the formal notations of pleas and sentencing.

On appeal to this Court, Walker contends that:

(1) habeas corpus relief must be granted under Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, since no record was made of the proceedings in state court;

(2) the district court erred in finding that Walker was afforded and enjoyed the benefits of effective assistance of counsel at the time of his pleading and sentencing; and

(3) the district court erred in finding that Walker knowingly, voluntarily, and understandingly entered pleas of guilty to the charges in state court.

Since we agree with the district court's determination of the *Boykin* issue,[1] we address ourselves solely to

---

1. In Boykin v. Alabama, supra, the Supreme Court held that:
   "In Carnley v. Cochran [citations omitted] we dealt with a problem of waiver of the right to counsel . . . We held: 'Presuming waiver from a silent record is impermissible. The record must show, *or there must be an allegation and evidence which show,* that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'
   We think that the same standard must be applied to determining whether a guilty plea is voluntarily made . . . We cannot presume a waiver of . . . important federal rights from a silent record."

   [Emphasis added] 395 U.S. at 242, 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279, 280.
   Relying on the italicized language in *Boykin* above and on this Court's decisions in Dennis v. Henderson, 5 Cir. 1970, 435 F.2d 1288, and Nobles v. Beto, 5 Cir. 1971, 439 F.2d 1001, the district court determined that *Boykin* does not require the automatic setting aside of a conviction obtained on a plea of guilty where the record is silent. The court concluded that " . . . in situations where the question of the voluntariness of a guilty plea is raised in a habeas corpus action the court is authorized and should either hold an evidentiary hearing to establish a record whereby it can be determined that a plea of guilty was freely

Walker's contention that he was denied effective assistance of counsel at the time of his pleas, and that therefore his pleas were not voluntarily and intelligently given. The determination of these issues is first a question of fact for the trial court, not to be disturbed on appeal unless clearly erroneous. Rule 52(a), F.R.Civ.P. The precise issue of whether a particular defendant enjoyed "effective" assistance of counsel, is, in the end, however, a question of *law*. As implied by the Supreme Court in Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, and Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, there is a legal standard, by definition normative and prescriptive, which must be applied to a particular set of facts in order to determine whether an accused received effective assistance of counsel. Thus while we question the trial court's findings of fact (see footnotes 4, 5, and 6 and accompanying text), we think the trial court erred in its conclusion of *law,* under *either* version of the facts, that Walker enjoyed effective assistance of counsel and thus pleaded guilty both voluntarily and intelligently.

In Powell v. State of Alabama, supra, the "Scottsboro case", the Supreme Court granted certiorari to decide whether the denial of the assistance of counsel in a criminal case violated the due process clause of the Fourteenth Amendment of the United States Constitution. In that case several blacks were accused of the rape of two white females. The state trial court appointed "all the members of the bar" to represent the defendants at arraignment. Only at the trial itself was specific defense counsel appointed. Limiting itself to the facts of this particular case, the Supreme Court held that in a capital case where the defendant is indigent and incapable of making his own defense, the court has the duty of appointing counsel to represent the defendant. The Court held that this duty was not discharged by an appointment that precluded effective assistance, that mere appointment of counsel is insufficient in and of itself to comply with the due process clause. While limited to its facts, *Powell* discussed the principles underlying effective assistance of counsel:

> "However guilty defendants, upon due inquiry, might prove to have been, they were, until convicted, presumed to be innocent. It was the duty of the court having their cases in charge to see that they were denied no necessary incident of a fair trial. . . . 287 U.S. at 52, 53 S.Ct. at 58, 77 L. Ed. at 162.

\* \* \* \* \* \*

> "[S]uch designation of counsel as was attempted [here] was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard . . . [T]his action of the trial judge in respect of appointment of counsel was little more than an expansive gesture, imposing no substantial or definite obligation upon any one . . . [T]he defendants did not have the aid of counsel in any real sense. . . . 287 U.S. at 53, 56, 57, 53 S.Ct. at 58, 59, 60, 77 L.Ed. at 162, 164.

\* \* \* \* \* \*

> "It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thorough-going investigation might disclose as to the

and voluntarily entered or else rely on a record established in a state habeas corpus hearing, which record is adequate under the provisions of 28 U.S.C.A. § 2254." Walker v. Caldwell, M.D.Ga.1971, 335 F. Supp. 308, at 313. The district court thus concluded that if an evidentiary hearing held after the entering of the plea shows that the pleas were voluntarily and intelligently made, that the proscriptions of *Boykin* are satisfied and the lack of a record at the time of the original plea is not fatal. We agree. Dennis v. Henderson, supra; Nobles v. Beto, supra.

facts. No attempt was made to investigate. No opportunity to do so was given. Defendants were immediately hurried to trial . . . Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. To decide otherwise, would simply be to ignore actualities . . . 287 U.S. at 58, 53 S.Ct. at 60, 77 L.Ed. at 165.

\* \* \* \* \* \*

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issues or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.

287 U.S. at 68, 69, 53 S.Ct. at 64, 77 L.Ed. at 170.

\* \* \* \* \* \*

"[W]e are of the opinion that, under the circumstances just stated, the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment."

287 U.S. at 71, 53 S.Ct. at 65, 77 L. Ed. at 172, 173.

In Von Moltke v. Gillies, supra, the Supreme Court delineated the standards to be applied in determining whether an accused who pleads guilty has been afforded effective assistance of counsel. The Court held that the accused in *Von Moltke*, who pleaded guilty, was denied effective assistance of counsel, and stated that:

"A waiver of the constitutional right to the assistance of counsel is of no less moment to an accused who must decide whether to plead guilty than to an accused who stands trial. [citations omitted] Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent.

332 U.S. at 721, 68 S.Ct. at 322, 92 L. Ed. at 319, 320.

\* \* \* \* \* \*

"In Powell v. State of Alabama [citations omitted], the trial court, instead of appointing counsel particularly charged with the specifc duty of representing the defendants, appointed the entire local bar. This Court treated such a cavalier designation of counsel as a mere gesture and declined to recognize it as a compliance with the constitutional mandate relied on in that case. It is in this light that we view the appointment of counsel for petitioner when she was arraigned. This lawyer, apparently reluctant to accept the case at all, agreed to represent her only when promised by the judge that it would take only two or three minutes to perform his duty. And it seems to have taken no longer. Even though we assume that this at-

torney did the very best he could under the circumstances, we cannot accept this designation of counsel by the trial court as anything more than token obedience to his constitutionally required duty to appoint counsel for petitioner. Arraignment is too important a step in a criminal proceeding to give such wholly inadequate representation to one charged with a crime." 332 U.S. at 722, 723, 68 S.Ct. at 322, 323, 92 L.Ed. at 320.

The correct legal standard to be applied where an accused with appointed counsel pleads guilty is as stated by the Supreme Court in *Von Moltke*. Further we note the language of McCarthy v. United States, 1969, 394 U.S. 459, 89 S. Ct. 1166, 22 L.Ed.2d 418, to the effect that "because a guilty plea is an admission of all the elements of a formal criminal charge, it *cannot* be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." [Emphasis added] 394 U.S. at 466, 89 S.Ct. at 1171, 22 L.Ed. at 425. Providing this "understanding of the law in relation to the facts" is the function of the accused's appointed counsel.[2]

We have previously considered the question of the standards to be applied to determine whether a defendant enjoyed effective assistance of counsel. We held in Kent v. Sanford, 5 Cir. 1941, 121 F.2d 216, that an attorney appointed to represent an indigent defendant is under an initial obligation to his client equal to that duty owed when he is retained and paid by the accused to represent him. We recognized in Lamb v. Beto, 5 Cir. 1970, 423 F.2d 85, however, that the same duty is not owed by appointed counsel to an accused who pleads guilty as to one who decides to go to trial:

Obviously, more would be required of counsel if the plea had not been guilty for some duty might have arisen to support this plea. However, it appears that the only required duty of counsel under the most liberal construction when a plea of guilty is entered is that counsel . . . should ascertain if the plea is entered voluntarily, and knowingly. Id. at 87.

The scope of this duty of appointed counsel in guilty plea cases, to insure that the plea is entered voluntarily and knowingly,[3] has been examined by us in several recent cases. On the facts of these cases we have generally denied relief. The cases in which we have denied relief fall into two categories. First, in many cases the petitioner has merely presented a bare assertion, unsupported by the record and contradicted at an evidentiary hearing, that he was denied effective assistance of counsel. In these situations we have uniformly denied relief on the basis of the "clearly erroneous rule", Rule 52, F.R.Civ.P. See Farmer v. Beto, 5 Cir. 1971, 446 F.2d 1357; Gotcher v. Beto, 5 Cir. 1971, 444 F.2d 696; Busby v. Holman, 5 Cir. 1966, 356 F.2d 75. Second, we have denied relief where the petitioner attacked the effectiveness of his appointed counsel on the sole ground of the shortness of the time his counsel spent on his behalf. In Daugherty v. Beto, 5 Cir. 1967, 388 F.2d 810, we denied relief on this ground, and noted that the petitioner's appointed counsel was a highly respected attorney and that "although this fact alone does not establish his effectiveness in a particular case, neither does brevity of consultation, without more, establish ineffectiveness." Id. at 813. *Daugherty* has been consistently followed in this Circuit. See Woodard

2. Nor can we ignore the Supreme Court's recent admonition in Argersinger v. Hamlin, 1972, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, to the effect that

Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as felony cases. Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution.

3. The *formal* requirements of this duty are now the responsibility of the trial judge in federal courts. Rule 11, F.R.Crim.P.

v. Beto, 5 Cir. 1971, 447 F.2d 103; Lamb v. Beto, supra; O'Neal v. Smith, 5 Cir. 1970, 431 F.2d 646; Evans v. Beto, 5 Cir. 1969, 415 F.2d 1129.

In the only recent habeas corpus case in which the petitioner did not present merely a bare conclusionary assertion or rely solely upon the shortness of time his counsel spent on his case, we affirmed the granting of habeas corpus relief to the petitioner. Colson v. Smith, 5 Cir. 1971, 438 F.2d 1075. There we held that the petitioner was denied effective assistance of counsel in his state court proceeding when he pleaded guilty. Commenting upon the Supreme Court's recent decisions in McMann v. Richardson, 1970, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L. Ed.2d 785, and Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L. Ed.2d 747, we stated:

> "A necessary result of the seriousness with which courts treat pleas of guilty, however, is that courts have a concomitant responsibility to assure that defendants who plead guilty do so voluntarily and knowingly. . . . We think that an equally important aspect of the courts' responsibilities in this problem area is the protection of the accused's right to the benefit of reasonably competent counsel in making his plea, especially when that plea is entered on advice of counsel. One cannot read the Supreme Court's opinions in *McMann, Parker* and *Brady,* supra, without being impressed by the significance the Court attached to the *role of counsel* in the process of deciding how to plead. In all three cases, it was obvious that the Supreme Court envisioned a system under which the defendant, advised by reasonably competent counsel, makes an informed and conscious choice . . . In any particular case in which the system fails . . . it is the courts' duty to supply relief." [Emphasis original] Id., 438 F.2d at 1079.

In examining the facts of the *Colson* case, it is clear that more was involved than a bare assertion that his appointed counsel spent too little time with him:

> "There is testimony from petitioner in this case that his court-appointed counsel informed him that one of his co-defendants was going to testify against him, that counsel could not undertake to defend him, . . . and that the best thing petitioner could do was plead guilty. Petitioner's counsel contradicted much of this testimony, but it was uncontroverted that petitioner adhered to his decision to plead not guilty until the day the case was called. Furthermore, it was uncontradicted that there was considerable discussion between the petitioner and his counsel, on the one hand, and the state trial judge, on the other, before petitioner entered his final plea. During this colloquy, it appears that petitioner resisted pleading guilty for some time before finally relenting. It also appears that although counsel knew beforehand that petitioner wanted to plead not guilty, counsel appeared in court on the day the case was called completely unprepared to go to trial. On this record the trial judge made a fact finding that petitioner's guilty plea was the product of ineffective assistance of counsel . . . We agree . . . with the district court's finding that under either version of the facts, the evidence in this case demonstrates that petitioner was ineffectively represented in his state court proceeding. We reach this conclusion even in light of the narrow duty imposed on counsel representing a defendant who pleads guilty. See Lamb v. Beto, supra. For we believe that the evidence in this case supports the conclusion that counsel actively tried to convince petitioner to plead guilty in the face of petitioner's repeated protestations of innocence; and to offset this evidence, there was no evidence that counsel's advice to plead guilty was based on any evaluation of petitioner's chances had he gone to trial. In other words, we do not have before us a case of 'reasonably

competent' advice which, with the benefit of hindsight, turned out to be mistaken . . . We are of the opinion that on this record there is no way that an appellate court could conclude that counsel had fulfilled his duty to ascertain that his accused client's plea of guilty was voluntarily and understandingly made. We therefore affirm the district court's order to set aside the conviction." Id. at 1079, 1080, 1081.

The complete factual situation persuaded the *Colson* panel that the petitioner had been denied effective assistance of counsel. Note 5 noted that the advice given an accused by his appointed counsel need not be "correct", only "reasonably competent", but went on to state:

". . . when . . . the defendant resisted pleading guilty and no reasons were given for urging a guilty plea on the defendant, courts cannot assume that there were satisfactory reasons for the plea. This is especially true when there appear positive reasons in the record why a petitioner might have pleaded not guilty." id. at 1081.

*Colson* stresses the fact that petitioner's counsel never spoke to the co-defendant, and never bothered to even find out who the witnesses were that petitioner maintained could provide an alibi for him. Also the petitioner had never been identified in a lineup, as had his co-defendants.

Our most recent decision in this area, Cooks v. United States, 5 Cir. 1972, 461 F.2d 530, was a direct appeal rather than a post-conviction state habeas case, but the constitutional standard applied is not different. There the defendant's conviction was vacated on the basis of lack of effective assistance of counsel. Cooks, an indigent, pleaded guilty on the advice of his appointed counsel to interstate transportation of a forged security in violation of Title 18, U.S.C. § 2314. As in *Colson*, supra, we held that the record, *taken as a whole*, demonstrated

that the defendant was denied effective assistance of counsel:

"Defendant, a virtual illiterate with a minimal, sixth-grade education, was charged on a facially defective six-count indictment . . . Notwithstanding the obvious inefficacy of the indictment, Defendant was advised by court-appointed counsel that should he go to trial on the indictment, he would face a maximum sentence of up to sixty years—ten years on each count. Instead of risking such an extended incarceration, defense counsel advised Defendant to accept a 'plea bargain' which had been negotiated with the Government's Attorney—if Defendant would plead guilty to Count I of the indictment [transporting the American Express Money Order], and face a maximum penalty of ten years in prison, the Government would move to dismiss the other five (unenforceable) counts. The Defendant quite understandably accepted the deal.

"While the good faith errors of appointed counsel are normally insufficient to justify granting a motion to vacate sentence, significant misleading statements of counsel can rise to a level of denial of due process of law and result in a vitiation of the judicial proceeding because of ineffective assistance of counsel. [citations omitted] Where counsel has induced defendant to plead guilty on the *patently erroneous* advice that if he does not do so he may be subject to a sentence six times more severe than that which the law would really allow, the proceeding surely fits the mold we describe as a 'farce and a mockery of justice'. [citations omitted]

\* \* \* \* \* \*

". . . [A]lthough counsel need not be a fortune teller, he must be a reasonably competent legal historian. Though he need not see into the future, he must reasonably recall (or at least research) the past . . . [T]he controlling Supreme Court precedents which demonstrate un-

equivocally that defendant could not possibly receive a total of 60 years on the indictment were decided more than a decade before this defendant pleaded guilty. Effective counsel should have been aware of and advised the defendant of, at a minimum, the maximum—that is, the maximum penalty as the law was then understood.

"Moreover, in addition to not having adequately advised his client of the possible punishment under the indictment, there is affirmative evidence in the record that counsel did not even inform the defendant regarding the nature of the offenses charged —not even of the single count to which the defendant pleaded guilty.

\*     \*     \*     \*     \*     \*

". . . [T]here is absolutely nothing in the record to demonstrate that the defendant had any understanding of the nature of the offense charged in the indictment, the factual basis for it, or, as discussed above, of the possible criminal sanctions of that conduct." [Emphasis original] 461 F.2d 531, 532, 533.

Thus taking into consideration the illiteracy of the defendant, the "patently erroneous" advice of appointed counsel, the failure of appointed counsel to even inform the defendant of the nature of the offenses charged, and the lack of *any* showing in the record of *any* understanding by the defendant of the proceedings against him, the *Cooks* panel of this Court held that the defendant's guilty plea was invalid.

Against the backdrop of the Supreme Court's admonitions in *Powell* and *Von Moltke* and in the light of our recent decisions in the area, particularly the *Colson* case, we proceed to examine the record before us in the instant case. The petitioner here does not merely make an unsupported assertion or rely exclusively on the brief time his appointed counsel, Watts, spent with him. Here we have the highly questionable prevailing practice in the Baldwin Superior Court of routinely appointing a single resident attorney to represent ten or more defendants at every Friday morning plea day without compensation; the lack of a record of the proceedings; the fact that Watts offered no advice to Walker as to whether or not to plead guilty; the significant fact of Walker's illiteracy; numerous indictments involving ten separate offenses on different occasions, all dealt with in a few minutes; and the fact that Watts made no attempt (1) to investigate the facts of the charges against Walker, (2) to talk to any witnesses,[4] (3) to explore the possibility

4. For example, Mr. Watts testified below that "usually if it is a burglary case, the person who is the victim of it—I say usually, a good part of the time—he will be in court". Walker was, of course, charged with seven burglaries. Watts testified that he could not remember whether the victims of the burglaries were in court on the morning of Friday, August 29, 1969, but he was sure that he made no attempt to and did not talk to any of them.

Mr. Watts also testified as to whether he made any investigation as to the value of the items alleged to have been stolen by Walker:

Q. I notice that in each one of these accusations that the value is given to the property that was allegedly taken from these various places. For example, the first one gives a value of $200, and each one all the way through gives some value. What does that have to do with the case? Is that a necessary element of the crime?

A. I don't think it makes any difference in the burglary, but I think in the theft by taking, I believe over a certain value, there is a difference as to whether or not it is a felony or a misdemeanor. I am not certain offhand. And as to why the District Attorney puts the amount in, I don't really know.

Q. Did you make any independent investigation in any of these cases to determine if the value as stated in the accusation was an accurate value, a fair value.

A. I don't remember specifically on these, but usually I do inquire about that, and generally my opinion of the value of those items, unless they are in exceptionally poor condition, is that the valuation that they place on them is less than, in my opinion, a fair value should be, and I think it is the policy of the

of a motion to suppress, or (4) to engage in any plea bargaining even though the presence of ten serious charges should suggest the possibility of plea bargaining to the veriest tyro.

Of the eleven indictments against Walker, three charged him with the crime of theft by taking under § 26–1802 of the Criminal Code of Georgia (1969). Section 26–1812 of this chapter states that "[a] person convicted of violation of sections 26–1802 . . . shall be punished as for a misdemeanor except: (a) If the property which was the subject of the theft exceeded $100 in value . . . ." Section 26–401 defines a felony as "a crime punishable by death, or by imprisonment for life, or by imprisonment for more than 12 months," (§ 26–401(e)) while a misdemeanor "means any crime other than a felony" (§ 26–401(g)). It would appear then that the maximum punishment for a misdemeanor under the Criminal Code of Georgia is 12 months' imprisonment. The above is set forth in order to point out that each of the three indictments charging Walker with theft by taking involved property the value of which was *less than* $100, i. e., a misdemeanor. Yet the state trial judge sentenced Walker to *three years* on each indictment, clearly in excess of the statutory maximum.[5] Since Walker does not here

Sheriff's Department and the District Attorney's office to put minimum value on things instead of maximum. But there again, that is an opinion.
Q. I notice here that a battery taken from the truck of Wilbur Wise, they have got it at $25, and that could be either way high or way low, couldn't it, depending on the age and condition and type of battery?
A. That's true, but I believe most of Mr. Wise's property consisted of trucks and machinery and it would be likely have been a heavy duty battery. He operated bulldozers and ten-ton trucks and things.
Q. Did you ever see any of these items that were allegedly taken?
A. Not that I recall.
Q. I believe you have said that you did not leave the courtroom in connection with any of these cases?
A. I don't think I did with these.

5. Mr. Watts testified below that he advised Walker of possible sentences he might receive if he pleaded guilty:
Q. Were you satisfied that he [Walker] understood what the consequences of pleading guilty would be?
A. Yes. I explained to him the number of counts for burglary and the number of other charges and told him that he could get 20 years for each count of burglary, and I am not certain but I think it is 10 years for theft by taking. I don't recall offhand the punishment for the other two.
Mr. Watts was also asked why each of the indictments included the dollar value of the property that had been allegedly stolen:

A. I don't think it makes any difference in the burglary, but I think in the theft by taking, I believe over a certain value, there is a difference as to whether or not it is a felony or a misdemeanor. I am not certain offhand. And as to why the District Attorney puts the amount in, I don't really know.
Thus Mr. Watts appears to have been ignorant of the fact that whether the crime of theft by taking is a felony or misdemeanor depends upon whether the value of the property taken is more or less than $100. As discussed in the text, each of the indictments charging Walker with theft by taking assesses the value of the property taken as less than $100, and thus was a misdemeanor, the maximum penalty for which is 12 months' imprisonment.
In addition, it appears from the testimony of Judge Carpenter, the state trial judge, that he was also unaware that Walker had been charged with three misdemeanors, i. e., theft by taking.
Q. Now, you say there were nine burglaries. Were not there three theft by taking or were there nine burglaries?
A. Well, I believe they were burglaries.
Q. Let me refer you to Accusation and Sentence No. 21315, 21316, and 21317 as the certified copies appear in the record from Tattnall Superior Court, the habeas corpus transcript, and ask you if they are three that you may have referred to as burglaries that are theft by taking.
A. I think that by referring to 26–802, which is, of course, theft by taking, this happened about the time the new criminal code went into effect.
Q. So we are talking about the same cases?

challenge the sentences he received we do not reach this point on appeal. But the unchallenged imposition of illegal sentences is indicative of the atmosphere surrounding Walker's pleas of guilty, and is an eloquent testament to the quality of representation by his counsel. We emphasize at this point that no record was made at the time of Walker's pleas

and sentencing. Coupled with the admitted operation of a *pro forma* assembly line for the representation of criminal defendants by counsel on plea days this adds weight to our conclusion that the entire court proceedings lacked the requisite regard for the rights of accused persons appearing before the court.[6]

A. Yes, it is the same thing. If you turn to Code Section 26–802, you will see that it deals with burglary and related offenses.

The new Criminal Code of Georgia, including § 26–1802 (Theft by taking), went into effect on July 1, 1969, some two months prior to Walker's pleading and sentencing. Section 26–802, referred to by Judge Carpenter above, deals with "Trial and conviction of parties who did not directly commit the crime." Section 26–1802 deals solely with theft by taking. Burglary and related offenses are covered by Chapter 26–16 of the Code, sections 26–1601 and 26–1602. In light of the three year sentences received by Walker, we can only assume that Judge Carpenter was not aware that the value of the goods taken must be $100 or more to constitute the *felony* of theft by taking. We do note that under the old Georgia criminal law, the watershed value was $50. See, e. g., Ga.Code, § 26–2627 (1953).

Judge Carpenter's testimony below as to his usual practice in guilty plea cases was as follows:

Q. What disposition was made of these cases [Walker's] before you?

A. They came on—I assume that this was tried on Friday. Friday is plea day for the Circuit. The matter came on, and while it has been almost two years, and handling cases in eight counties in the Circuit, and there are a great many of them, I cannot remember what happens in each case, and I wouldn't attempt to say. But knowing my practice for a long time, I have always taken pains to see that defendants were properly represented. I realize the seriousness of that. Many times, after they have wanted to plead, there may be some intimation that they probably don't, well, I stop it right then. I don't ever take a plea unless I am satisfied that the plea is freely and voluntarily done and with the advice of counsel.

Mr. Watts testified that he made no attempt to advise Walker whether to plead guilty. In addition, we hold today that Walker was not "properly represented".

6. The district court made a credibility choice between Walker and his appointed attorney and the state trial judge. We cannot say that the court erred in finding much of Walker's testimony before him to be unbelieveable. We do note two circumstances, however. First, Walker alone testified in person before the district court. His appointed attorney, the state trial judge, the sheriff and his deputies, all testified by deposition. Secondly, in his opinion denying Walker habeas corpus relief, the district court stated that:

"To credit the testimony of petitioner would require that we discredit the testimony [deposition] of a member of the bar, the Sheriff of Baldwin County along with two of his deputies and of Judge Carpenter [the state trial judge]. Judge Carpenter affirmatively stated that he would never countenance an involuntary plea of guilty. *I happen to know Judge Carpenter and I know that he would not do so even if he had not so testified.* It is *unthinkable* that this experienced, capable and conscientious Judge would sentence a man to 30 years after that man told him that he was not guilty of the charges against him. Nor can it be presumed that a member of the bar would plead a man guilty without authority to do so and over his protestations of innocence. To make a finding that the events did transpire as alleged by petitioner would require a much stronger showing than we have here." - [Emphasis added]

Walker v. Caldwell, M.D.Ga., 335 F. Supp. 308 at 315.

Our decision of this case is not based upon either crediting Walker's testimony or upon discrediting that of Judge Carpenter or Mr. Watts. Neither evaluation is necessary. But we note: (1) whether Judge Carpenter was "experienced, capable and conscientious" is not the issue; rather, in a case of this kind we are concerned with the particular events that transpired on the morning of Friday, August 29, 1969; (2) the lack of a record of the proceedings, combined with the in-

Taking the situation here as a whole, we hold that Walker's plea and conviction approximates the situation in *Von Moltke*, where the Supreme Court stated that "[e]ven though we assume that this attorney did the very best he could under the circumstances, we cannot accept this designation of counsel by the trial court as anything more than token obedience to his constitutionally required duty to appoint counsel for petitioner." In view of the total factual situation present when Walker pleaded guilty we hold that he was denied effective assistance of counsel, and hence that his pleas were not voluntarily and knowingly given. This result is reached on the facts here. We do not hold that every appointed counsel representing an accused who desires to plead guilty, or whom he advises to plead guilty, must investigate all the facts of the case, explore all possible avenues of defense, etc., to the extent required of appointed counsel representing an accused who pleads not guilty and goes to trial. We do hold that under these facts, as in *Von Moltke* and *Colson*, something more is required than the *pro forma* procedure followed here. The key words are "effective assistance of counsel." Much of the language of our recent cases in the area refers to whether the assistance of counsel was "effective". We must not ignore the equally important first requirement that appointed counsel actually and substantially *assist* his client in deciding whether to plead guilty.

The judgment of the district court is reversed, and the cause is remanded with directions to grant Walker's petition for a writ of habeas corpus. The State of Georgia has the option, of course, of retrying Walker, at which time he will be allowed to replead.

Reversed and remanded.

BELL, Circuit Judge (specially concurring):

I concur in the result reached that appointed counsel was ineffective under the circumstances.

The district court did not really come to grips with the issue of the alleged ineffectiveness of counsel. The focus was on the *Boykin* claim, and on the claim that the pleas of guilty were not voluntarily made. The claim of ineffectiveness of counsel having been considered in a tangential fashion if at all, we would normally remand for findings and conclusions on this issue. However, this is the second appearance of the case in this court and it is in the interest of both petitioner and the public to conclude it if possible. The public has the right to hold petitioner responsible on the charges against him, and he has the right to plead anew, either guilty or not guilty.

I agree that the matter can be concluded on the basis of ineffectiveness of counsel, given the hurried process employed and the irrefutable proof of ineffectiveness which appears in the fact that petitioner pleaded and was sentenced to felonies on three counts which were in fact misdemeanors. It is also admitted that counsel did not familiarize himself with the facts as to any of the charges or make any judgment as to whether petitioner should plead guilty. These facts make out ineffectiveness of counsel as a matter of law.

I do, however, fully agree with Judge Bootle that petitioner failed to prove his claim that the state trial judge accepted the pleas of guilty in the face of petitioner's protestations of innocence. I do not understand the majority to hold otherwise.

ability of these witnesses to remember the details of Walker's pleas and sentencing forces courts in cases like this to rely on circumstantial evidence to determine what actually occurred; the "usual practice" of court and counsel does not in and of itself render Walker's testimony incredible; and (3) in *Colson,* supra, at

least, we had the situation where appointed counsel pled his client guilty against his will. In addition, were we to reach a different result in this case, we might consider remanding the case for reconsideration by a different district court judge not as well acquainted with the state trial judge.