Ronald Wayne BRADBURY, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Respondent-Appellee.

No. 80–5647.

United States Court of Appeals, Fifth Circuit.* Unit B

Oct. 15, 1981. Rehearing and Rehearing En Banc Denied Dec. 30, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Archibald J. Thomas, III, Asst. Federal Public Defender, Jacksonville, Fla., for petitioner-appellant.

David P. Gauldin, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before RONEY, KRAVITCH and ANDERSON, Circuit Judges.

RONEY, Circuit Judge:

Petitioner appeals from the denial of his petition for writ of habeas corpus, alleging that his guilty plea was not knowingly and voluntarily given and that he was denied effective assistance of counsel. Finding no merit to petitioner's arguments, we affirm.

### I. FACTS

Due to the nature of petitioner's allegations, the facts of this case are set forth in some detail. In November 1964, Ronald Bradbury, petitioner, and two codefendants were arrested and charged with robbery, grand larceny, and the breaking and entering of an automobile in Bradford County, Florida. At the time of arraignment on November 9, 1964, the public defender was appointed to represent petitioner. Trial was set for November 16, 1964.

On the morning of the trial date, the petitioner, through his defense counsel, advised the court he wished to claim the defense of insanity at the time of the offense. Defense counsel explained that information had come to his attention the previous week upon which the defense could be based, and he requested the court to appoint a psychiatrist to examine petitioner. Petitioner himself informed the court at that time that he had undergone psychiatric treatment on several occasions in the past, and entered a plea of not guilty by reason of insanity. The court indicated it would appoint "some competent medical person" to examine him. On the following day, Dr. Barry of Starke, Florida, was appointed to examine petitioner and to evaluate his sanity at the time of the offense as well as his competency to stand trial. Dr. Barry was not a psychiatrist or psychologist, but had "some background in the psychiatric/psychological field." He conducted his examination of petitioner in the jail. According to petitioner, no psychological tests were given, and the doctor's examination required no more than ten to fifteen minutes. On November 19, 1964, Dr. Barry issued his written report of one sentence stating:

> It is the opinion of the undersigned that the defendant was legally sane at the time of the commission of the offense and that he possesses the mental capacity at this time to understand the nature and gravity of the crime and is capable of distinguishing right from wrong.

In 1964 it was the practice in Bradford County to appoint Dr. Barry to conduct such examinations. No psychiatric or psychological specialist was available in the county.

Reports of petitioner's prior psychiatric and psychological examinations were in existence at the time his case was pending. On at least five occasions prior to 1964, the petitioner had been examined by psychological experts. He had once been placed in a therapy group, but stopped attending before its conclusion. Defense counsel was aware of these reports, but apparently did

not attempt to subpoena the records or depose the doctors themselves. In addition to these reports, there were lay witnesses available who would have testified to petitioner's personality disorders at or around the time of the offenses. Counsel listed six lay witnesses in his insanity plea notice.

Petitioner's counsel informed him of Dr. Barry's report. The petitioner testified he was told that a psychiatrist had found him to be sane. Petitioner's counsel does not remember referring to Dr. Barry as a psychiatrist. Indeed counsel previously had complained many times to the court in his capacity as public defender about the court's use of Dr. Barry for psychological testing of defendants. Upon learning of Dr. Barry's conclusion on his sanity, petitioner asked his counsel to obtain another opinion. The public defender, however, had not been provided any budget for such services and felt that due to prior practices of the court a request for a second expert would be futile. After a discussion of these realities, the petitioner reached a decision to plead guilty.

Defense counsel negotiated with the prosecutor and perhaps the court and reached an agreement whereby Bradbury would receive a life sentence on the robbery charge if he pled guilty. There are indications in the record that as part of the agreement, the sentences for other charges were to run concurrently rather than consecutively. It was the practice during that time not to inform the defendant of a plea bargain agreement.

Bradbury received a life sentence for the robbery charge and concurrent sentences of 10 years, 5 years, and 5 years for another robbery charge, and two breaking and entering, grand larceny charges. At the time of his offenses in 1964, Bradbury was twenty years old and had a sixth or seventh grade education. Bradbury concedes that he was sane at the time his guilty plea was entered.

## II. GUILTY PLEA

■ A plea of guilty must be a voluntary and knowing act. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A guilty plea made by one fully aware of the plea's consequences must stand unless induced by threats, misrepresentations, or improper promises. *Id.* at 755, 90 S.Ct. at 1472. Since a guilty plea is a waiver of trial, "it must be an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences.' " *McMann v. Richardson*, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970) (quoting *Brady v. United States*, 397 U.S. at 748, 90 S.Ct. at 1468). Bradbury contends that his guilty plea was not made knowingly and voluntarily because he did not know Dr. Barry was not a psychiatrist (relevant circumstances) and he did not know about the plea bargain agreement (likely consequences).

■ Bradbury claims the primary reason for changing his not guilty by reason of insanity plea to a guilty plea was Dr. Barry's report finding him sane. Had he known Dr. Barry was not a psychiatrist, he claims he would not have changed his plea. Although Bradbury may have thought Dr. Barry was a psychiatrist, there is no constitutional requirement that a psychiatrist had to be appointed to examine Bradbury. *See Smith v. Baldi*, 344 U.S. 561, 568, 73 S.Ct. 391, 394, 97 L.Ed. 349 (1953).

■ It does not appear from the record that the court ever referred to Dr. Barry as a psychiatrist, promising only to appoint "some competent medical person" as permitted by Florida law. While Bradbury's counsel does not remember whether he actually told Bradbury that Dr. Barry was not a psychiatrist, he said it was unlikely that he referred to Dr. Barry as a psychiatrist since he had objected to the appointment of Dr. Barry as the examining doctor on other occasions involving an insanity plea. Given the lapse of time since these events took place, it is not clear exactly what transpired. Nevertheless, from the record it does not appear that anyone misrepresented Dr. Barry as a psychiatrist to Bradbury. Absent such a showing, petitioner has not proved this part of his claim that his plea was involuntary.

Bradbury also challenges the voluntariness of his plea due to his lack of knowledge of the plea bargain agreement. With the practices of the time it is apparent he did not know the particulars of the agreement. His attorney, however, fully discussed his case with him. Defense counsel is certain he told Bradbury what the maximum sentences for his offenses were. The district court found, and Bradbury does not challenge it here, that Bradbury knew he could receive life imprisonment for his guilty plea. Although he did not know the details of the plea bargain agreement, he did know the maximum sentence for his guilty plea. There was no misrepresentation of his possible sentence. Although he was hoping for a lesser sentence, that subjective hope is insufficient to make his guilty plea involuntary. *See Matthews v. United States,* 569 F.2d 941 (5th Cir. 1978); *United States v. Battle,* 467 F.2d 569 (5th Cir. 1972). As long as Bradbury understood the length of time he might possibly receive, he was fully aware of his plea's consequences. *See United States v. Maggio,* 514 F.2d 80 (5th Cir. 1975); *Dunlap v. United States,* 462 F.2d 163 (5th Cir. 1972). Since Bradbury was aware of the consequences and his plea was not induced by any misrepresentation, his guilty plea must stand.

## III. ASSISTANCE OF COUNSEL

Once a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). If the advice of counsel falls below the minimum required by the Sixth Amendment, the guilty plea cannot have been made knowingly and voluntarily because it would not represent an informed waiver of the defendant's constitutional rights. *Mason v. Balcom,* 531 F.2d 717, 725 (5th Cir. 1976).

When a guilty plea is entered, it is defense counsel's duty to assist actually and substantially the defendant in deciding whether to plead guilty and to ascertain whether the plea is entered knowingly and voluntarily. *Id.; Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974); *Walker v. Caldwell,* 476 F.2d 213 (5th Cir. 1973). Counsel must be familiar with the facts and the law in order to advise the defendant meaningfully of the options available. *Calloway v. Powell,* 393 F.2d 886 (5th Cir. 1968). This includes the responsibility of investigating potential defenses so that the defendant can make an informed decision. *Lee v. Hopper,* 499 F.2d 456 (5th Cir. 1974). Counsel's advice need not be the best, but it must be within the realm of competence demanded of attorneys representing defendants in criminal cases at that time. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Ballard v. Blackburn,* 583 F.2d 159 (5th Cir. 1978). The actions of the trial court may cause the ineffectiveness of counsel's assistance. *See Hintz v. Beto,* 379 F.2d 937 (5th Cir. 1967); *McCollum v. Bush,* 344 F.2d 672 (5th Cir. 1965).

Bradbury claims he was denied the effective assistance of counsel by the trial court's failure to appoint a qualified psychiatrist and by defense counsel's failure to investigate fully his insanity defense. Bradbury claims he should have had psychiatric assistance in pursuing his only available defense. A psychiatrist is not constitutionally required. Florida law provided that "the court may appoint one or more disinterested qualified experts" for such an examination. Fla.Stat. § 917.02 (1963). There is no evidence that Dr. Barry was unqualified. His report stated that Bradbury was not insane at the time of the offense under the applicable *McNaughten* test. On this point, the Constitution was satisfied.

Bradbury faults his attorney for failing to acquire the reports and records of his previous psychiatric examinations and treatments, for failing to inform him of the plea bargain agreement, and for failing to press his request for the appointment of a psychiatrist. The record indicates that

Bradbury's attorney knew of the reports and records but probably did not seek to obtain them. The attorney cannot remember whether he contacted any of the people who had earlier tested his client. He did have Dr. Barry's report to consider. He thought the evidence of insanity to be adduced from his lay witnesses was weak, apparently basing his judgment on witness interviews. From this, he thought there was little chance to succeed on the insanity defense. There is no evidence that those reports would have established Bradbury's insanity defense. Aware of the existence of the reports and records, his witnesses' expected testimony, Dr. Barry's report, and the strength of the State's case, counsel advised Bradbury of the facts and his chances, and Bradbury decided to plead guilty. Defense counsel provided actual and substantial assistance to Bradbury. In *McMann*, the Supreme Court recognized the difficulty of pleading guilty before all the facts were known.

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court.... Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

397 U.S. at 769–70, 90 S.Ct. at 1448.

Although the practice in Bradford County in 1964 was not to inform defendants of plea bargain agreements for fear of making them involuntary, petitioner was advised of the maximum sentence possible with a guilty plea. Counsel's actions did not fall below the minimum assistance due Bradbury under the Sixth Amendment.

██ Counsel did present Bradbury's request for a psychiatrist. The court appointed Dr. Barry. There is no evidence to indicate whether defense counsel protested then. After the examination and subsequent report, Bradbury requested another opinion. His attorney told him that the trial court rarely appointed a second expert and that his office did not have funds for such testing. Bradbury then decided to change his plea. By pleading guilty, Bradbury relieved his counsel of any further obligation to press for an additional psychiatric examination.

Defendant has failed to carry his burden of demonstrating ineffective assistance of counsel. From the facts before this Court, we conclude that Bradbury's defense counsel rendered advice which was within the realm of competency demanded of attorneys representing defendants in criminal cases in 1964.

AFFIRMED.