**Leonard O. DIAZ, Jr.,**
**Petitioner-Appellant,**

v.

**T.C. MARTIN, Warden, Federal**
**Correctional Institution, et al.,**
**Respondents-Appellees.**

**No. 82–1480.**

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1983.

Rehearing and Rehearing En Banc
Denied Dec. 23, 1983.

Anna Stool, Asst. U.S. Atty., Houston, Tex., for petitioner-appellant.

Barbara J. Lipscomb, Asst. Atty. Gen., Austin, Tex., for respondents-appellees.

Before RUBIN and JOLLY, Circuit Judges, and PUTNAM,* District Judge.

ALVIN B. RUBIN, Circuit Judge:

The Constitution forbids judicial acceptance of a plea of guilty to a criminal offense unless that plea is entered both voluntarily and knowingly. To ensure that guilty pleas are entered only as the result of an informed and conscious choice, the accused has the right to the effective assistance of counsel in deciding upon and entering such a plea. This instrumental right cannot be satisfied by a facade, but requires actual and competent advice. Construed most favorably to the state, the record shows that court-appointed counsel failed to discharge even the bare minimum of his duty; if he assisted the accused at all, that assistance was entirely ineffective. Notwithstanding counsel's abdication of responsibility, however, the district court's finding that the guilty plea was entered voluntarily and knowingly is supported by the record, as is that court's conclusion that the accused suffered no prejudice as a result of his trial lawyer's feckless conduct. Accordingly, we affirm the district court judgment denying a writ of habeas corpus to the petitioner.

I.

After an evidentiary hearing, the district court made findings of fact, which we summarize. We add only the testimony of the lawyer who represented the accused in the state court, which the trial court fully credited, and that part of the state's evidence not contradicted by Diaz:

Before this case arose, Leonard O. Diaz, Jr. had been convicted of two felonies.[1] Some time after he had served his sentence on these charges, Diaz was indicted for aggravated assault in Ector County, Texas. The charge was that he "intentionally and knowingly cause[d] serious bodily injury to John Henry Hankins by striking, hitting, and beating him with a tire tool." After a separate incident in which a taxi was stolen and then abandoned a few blocks from where it had been taken (apparently after a wreck), Diaz fled Ector County and went to Dallas. There Diaz either surrendered or was arrested on a drunken-driving charge.

Two state detectives questioned Diaz about the aggravated assault and the taxi incident, though he had not yet been indicted for the latter. The detectives obtained a confession admitting at least some elements of the aggravated assault charge. They also obtained a confession that he had, "while in the course of committing theft" of the taxi "with intent to obtain and maintain control of the property, using and exhibiting a deadly weapon, namely a knife, knowingly and intentionally threaten[ed] the owner" and placed the driver "in fear of imminent bodily injury and death." Statements previously taken from the owner confirmed the confession.

The maximum penalty for aggravated assault is ten years' confinement; for theft while using a deadly weapon, 99 years. The detectives offered to recommend a sentence

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Both convictions resulted from guilty pleas. Neither judgment of conviction is in the record, nor is any other evidence of the date of the convictions. Counsel representing Diaz on appeal inferred from concurrent sentences that the first conviction had not become final when the second plea was entered. From this she concluded that the two convictions could not serve as the basis for a habitual-criminal charge under Tex.Penal Code Ann. § 12.42(d) (Vernon 1974). Diaz testified, to the contrary, that he entered the first plea months before the second.

of fifteen years if Diaz would plead guilty to both charges. If he did not, they informed him, he could be sentenced to life imprisonment.[2] Whether for this reason or for some other, Diaz decided to accept the plea bargain. A bill of information was then drawn charging him with the taxi offense.

The next day, Diaz was brought to the Ector County Courthouse. The district clerk asked him if he had a lawyer. When Diaz responded that he did not, the clerk instructed him to sign papers that would enable the court to appoint a lawyer for him. Taking the name of a lawyer from a list of counsel scheduled to represent indigents in turn, the judge appointed an Odessa lawyer. The lawyer had some experience with criminal cases, but his principal practice for twenty-five years had been the preparation and trial of personal-injury cases. He came to the courthouse immediately after being notified that he was appointed to represent Diaz. He testified that he was told that "the man was there at the courtroom ready to plead and it was going to be done right then." His testimony continued: "whenever I have had these appointments where the person has indicated that he wants to plead and he is already there at the courtroom and they call me to come over as quick as you can, everybody is waiting, the judge, the District Attorney and the prisoner."

Concerning his service to Diaz, the lawyer testified: "I asked him ... did you do it? Are you guilty of the crimes you have been charged with? ... Mr. Diaz told me he was guilty and he did not want a jury trial and that he wanted to plead guilty. In fact, ... the reason for my appointment and the reason I came over [was] because I was told that the man was at the courtroom ready to plead and it was going to be done right there." The lawyer said he asked Diaz, "what kind of deal had he made .... Ten years on one offense and fifteen on the other to run concurrent. I asked him whether he was satisfied ... and whether that is what he wanted to do and he told me that it was." The lawyer conducted no investigation of the facts "because the man indicated he did not want a jury trial." He conducted no independent legal research "because everything transpired in the courtroom from the time I was appointed until the plea was over."

Diaz testified that he did not participate in the taxi robbery. His version was that he was riding in the front seat when another passenger, who was riding in the back seat, threatened and became engaged in a struggle with the driver. Diaz testified that, while the driver and the other passenger were fighting, he drove off in the cab not intending to steal it, but merely to escape the violent scene.

To prove aggravated robbery under Texas law, the state must establish that the taker employed a deadly weapon and intended to deprive the owner of his property permanently.[3] Conviction for aggravated assault requires proof that the victim suffered serious bodily injury, that is, "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[4] Diaz contends that, had the lawyer informed him of what the state had to prove to convict him, he would

2. Diaz and the state assume in both their briefs and argument that this was based on a threat to charge Diaz as a habitual criminal under Tex.Penal Code Ann. § 12.42(d) (Vernon 1974). This threat is not mentioned in the testimony, however.

3. *Harris v. State,* 562 S.W.2d 463, 466 (Tex.Cr. App.1976); *Ex Parte Rogers,* 519 S.W.2d 861, 863 (Tex.Cr.App.1975); *Herring v. Estelle,* 491 F.2d 125, 129 (5th Cir.1974).

4. Tex.Penal Code Ann. § 1.07(a)(34) (Vernon 1974); *e.g., Allen v. State,* 559 S.W.2d 656, 658 (Tex.Cr.App.1977). If the victim was not so seriously injured, the assailant can be guilty only of simple assault: causing or threatening bodily injury or causing physical contact the

not have pleaded guilty to either aggravated assault or aggravated robbery.[5]

The district court found that Diaz "fully understood the nature of the charges in his indictment, fully understood the contents and effect of the documents signed by him, and fully understood the effects and consequences of his pleas of guilty." The court also found that Diaz "advised his counsel, prior to entering his pleas of guilty, that he was in fact guilty of the offenses, and that he desired to plead guilty in each case." These findings were based on the lawyer's testimony (which the court credited), the state's corroborative evidence, and the similarity between papers Diaz signed in this case and papers he signed in the two prior felony cases. The court also found that the lawyer had satisfied himself that Diaz understood "the nature of the charges against him, the effect and consequences of his pleas of guilty, and that Petitioner was pleading guilty knowingly and voluntarily." "Any failure [by the lawyer] to further investigate the facts or law relative to Petitioner's cases did not materially prejudice Petitioner or render counsel ineffective."

## II.

In *Washington v. Watkins*, 655 F.2d 1346 (5th Cir.1981), we reviewed our prior jurisprudence concerning the standard for review of counsel-effectiveness. Noting that we had applied inconsistent standards in two lines of cases, we rejected the decisions holding the question to be purely factual and held that, although subsidiary findings of basic, historical fact are binding unless clearly erroneous, we must make an independent evaluation based on those subsidiary findings to determine whether counsel's representation was sufficiently effective to satisfy the sixth and fourteenth amendments. The same standard controls review of plea-voluntariness, as the Supreme Court recently explained in *Marshall v. Lonberger*, —— U.S. ——, ——, 103 S.Ct. 843, 849, 74 L.Ed.2d 646, 656 (1983).[6]

A plea of guilty is more than a confession of having acted culpably; it is itself a conviction.[7] The plea waives the constitutional right against self-incrimination, the right to confront one's accusers, and the right to trial by jury.[8] Therefore, the plea must not only be entered voluntarily, but also knowingly and intelligently: the defendant must be aware of the relevant circumstances and the likely consequences.[9] If, however, a defendant understands the nature of the charges against him and the consequences of his plea, yet

offender knows or should believe the other will regard as offensive or provocative.

5. Diaz also contends that his confession to this crime was extracted by threats of bodily injury and that the lawyer refused to listen to his claim that he had not signed the documents voluntarily. Neither the state court nor the federal district court credited this testimony. Because their treatment of this issue was based simply on the choice to credit another witness's testimony, we accept their findings. 28 U.S.C. § 2254; Fed.R.Civ.P. 52(a).

6. In *Marshall*, the Supreme Court announced with unmistakable clarity that questions of historical fact pertinent to the voluntariness of a guilty plea are questions of fact, subject in federal habeas cases to 28 U.S.C. § 2254(d). By contrast, "the governing standard as to whether a plea is voluntary for purposes of the federal Constitution is a question of federal law," of which state court determinations are not entitled to a presumption of correctness. —— U.S. at ——, 103 S.Ct. at 849, 74 L.Ed.2d

646. The *Marshall* Court's analysis demonstrates that application of the chosen standard to the established historical facts—that is, the ultimate determination whether a guilty plea was entered voluntarily—is not a question of historical fact, but rather a matter appropriate for independent federal review. *See* 103 S.Ct. at 852–53. *Accord, Washington v. Watkins*, 655 F.2d 1346, 1354 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

7. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969).

8. *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712; *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

9. *Boykin*, 345 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279; *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

voluntarily chooses to plead guilty, that plea should be upheld on federal review.[10]

Vigilant as we are to protect these rights, we find no constitutional infraction here. As we summarize below, the record supports the district court's findings both that Diaz fully understood the nature of the charges against him and that his decision to plead guilty to the offenses charged was an informed and conscious choice.

■ The state judge did not explain to Diaz any of the elements of the offenses charged. *A fortiori,* he did not explain that, to convict Diaz of the aggravated assault charge, the State was required to prove beyond reasonable doubt that the victim suffered serious bodily injury. The face of the indictment makes clear, however, that serious injury is an element of the offense. The record thus supports the district court's finding that Diaz understood the nature of his charge, at least to the extent that it was spelled out in the indictment. If the accused understands the elements of the offense to which he pleads guilty, a state court is not required to explain the crime before accepting a guilty plea.[11]

■ To convict Diaz of the offense charged in the bill of information, aggravated theft, would have required proof that he exhibited a deadly weapon, "namely a knife," thus knowingly placing the driver in fear of imminent bodily injury or death. Diaz contends that he was not advised what proof was necessary to establish that a knife is a deadly weapon[12] and that the record lacks sufficient facts to support the charge. Diaz knew that he was charged with using a knife, however, and it seems obvious that a jury might have decided from the taxi driver's statement that the knife was employed to threaten him with its deadly potential.

■ Diaz's second attack on the sufficiency of his understanding of this charge revolves around the element of intent to deprive the owner of his property permanently. Diaz contends that he merely intended to use the taxi to escape from the robbery scene and that the taking of a vehicle with the intention of using it temporarily is not theft but a less-severely punished crime. If Diaz intended to leave the taxi for return to the owner after driving only a few blocks[13] and the state could not prove his intent to deprive the owner of the taxi permanently, he could not be convicted of aggravated theft. But the record contains ample evidence that Diaz knew he could be charged either with aggravated theft or with attempt to commit aggravated theft of the taxi driver's money—an offense punishable by confinement for up to 99 years. We conclude, therefore, that the district court correctly found that Diaz knowingly pleaded guilty as part of a plea bargain favorable to him.[14]

### III.

Diaz contends also that in its findings of fact and conclusions of law, the state habeas trial court found that Diaz did not know that he could have ten days to prepare for trial and that his court-appointed counsel did not advise him of this procedural right. This is simply a misreading of the record. The finding was, *"If all the defendant's testimony is accepted at face value,* the ends of justice would be served by granting a new trial." (Emphasis added.) That court did not accept Diaz's testimony "at face value," for it found that "the trial

---

10. *Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir.1980) (en banc).

11. *Banks v. McGougan,* 717 F.2d 186 (5th Cir. 1983).

12. Under Texas law, a knife is a deadly weapon only when the manner of its use shows that it can cause or is intended to cause death or serious injury. *Harris v. State,* 562 S.W.2d 463, 466 (Tex.Cr.App.1976).

13. We note that this assertion is contradicted by a stipulation of evidence signed by Diaz.

14. Diaz was on parole when the habeas corpus hearing was held. He is once again incarcerated, however, because his parole was later revoked for violation of its terms.

court substantially complied with the requirement of article 26.13 C.C.P.; it does not appear that the defendant was misled or harmed by the admonishment of the court."

## IV.

In criminal cases, the effective assistance of counsel is a constitutional imperative. The sixth amendment, applicable to the states through the fourteenth amendment, requires more than the mere appointment of counsel for indigent defendants: it requires that appointed counsel render effective assistance.[15] Moreover, ineffective assistance may render a guilty plea involuntary and hence invalid as a waiver of the defendant's rights against self-incrimination, to confront his accusers, and to trial by jury.[16] Whether appointed or retained, counsel must, therefore, ensure that guilty pleas are entered only as an informed and voluntary choice, by actually and substantially assisting the defendant in deciding whether to plead guilty.[17] It is essential that counsel be familiar with the facts and the law, including potential defenses, so that he can fully advise the defendant of options available to him.[18] The quality of advice provided by counsel to a defendant who pleads guilty must be within the standard of competence demanded of attorneys representing fee-paying defendants in criminal cases at the time.[19] This does not exact an inordinate expenditure of time. The criterion is quality—not quantity—of effort.[20] Effective assistance may be rendered in the twenty to thirty minutes the appointed lawyer said he spent with Diaz, or counsel may remain ineffective despite a month of futile exertions.

Appointed counsel did not perform his duties. Eager to assist the judge who was waiting, he asked Diaz perfunctory questions. He made no investigation whatever, did not ask to see the prosecution's file, did not know the facts on which the charges were based, did not know what the state was required to prove, and did not explain to Diaz the nature of those charges or the elements of the offenses beyond ascertaining that Diaz had read and signed the documents submitted to the state court to support the guilty plea. Our listing of these omissions does not imply the creation of a list of duties, each of which must be performed lest counsel be held ineffective. Instead, we summarize them to demonstrate that, considering counsel's conduct as a whole, the representation in this case was ineffective.

Counsel cannot exonerate himself by the assertion that his client asked for no more than perfunctory inquiry and a lawyer to stand up with him in order to assure that the state kept its bargain. Unless the client declines advice, his counsel has a duty to advise him competently and fully. A lawyer's professional duty requires more than mechanical review of the documents signed by the accused and acquiescence in a plea bargain already struck. If the accused refuses to accept proper representation, the lawyer should either withdraw or inform the court fully about the limited nature of the service he has been able to render.

However, the conclusion that counsel did not perform his duty does not automatically entitle Diaz to relief. In addition to proving his counsel's shortcomings,

15. *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333, 343 (1980).

16. *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir.1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982). *See* authorities cited *supra* notes 7–9.

17. *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir.1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982); *Herring v. Estelle,* 491 F.2d at 127; *Walker v. Caldwell,* 476 F.2d 213 (5th Cir.1973).

18. *Calloway v. Powell,* 393 F.2d 886 (5th Cir. 1968).

19. *Lamb v. Estelle,* 667 F.2d 492 (5th Cir.1982); *Bradbury v. Wainwright,* 658 F.2d at 1087.

20. *Jones v. Estelle,* 622 F.2d 124, 127 (5th Cir. 1980); *Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir.1980); *Carbo v. United States,* 581 F.2d 91, 93 (5th Cir.1978).

a defendant asserting an ineffective-assistance claim must demonstrate that these failings "worked to his *actual* and substantial disadvantage." [21] "A failure to prove that he was prejudiced, like a failure to prove that his attorneys' efforts were inadequate, results in a denial of the writ." [22] Only after the defendant thus demonstrates that he was disadvantaged does the burden shift to the state to show harmless error.[23] Diaz has failed to show that he was prejudiced by his lawyer's conduct, for the district court found that he did in fact know the elements of the offenses charged. Failure to demonstrate that counsel's failings worked to his actual and substantial disadvantage is fatal to Diaz's claim.

Without condoning the failure of court-appointed counsel to perform his duty, we AFFIRM the judgment because Diaz was shown to have pleaded knowingly and voluntarily and because he has not shown prejudice as a result of his counsel's failings.

E. GRADY JOLLY, Circuit Judge, specially concurring:

I concur with the result the majority reaches and in its holding that a guilty plea which is both voluntarily and knowingly entered should not be set aside.

Thus, with respect to Part IV of the majority opinion, I would make clear that the duty of counsel here was only to assure that the plea of the petitioner was knowingly and voluntarily entered. Notwithstanding any suggestion by the majority to the contrary, counsel was not required to investigate possible defenses, to check for possible weaknesses in the prosecution's case, to familiarize himself with all the details of the factual background, or to check the latest citations of relevant cases. I specially concur to express my under-

standing that there can not be and should not be any check list to be applied with any degree of rigidity in determining the effectiveness or ineffectiveness of counsel. As our cases have held numerous times, the effectiveness of counsel should be judged on a case-by-case basis and it "turns in each case on the totality of the facts in the record." *Gray v. Lucas,* 677 F.2d 1086, 1092 (5th Cir.1982). It follows, therefore, as our precedent demonstrates, that the effectiveness of counsel is to be judged differently in a case in which an individual expressly wishes to enter a plea of guilty and waive jury trial from a case in which the defendant wishes to enter a plea of not guilty and to be tried by jury. When the defendant expressly wishes to enter a plea of guilty, the only duty of counsel is to assure that the plea is knowingly and voluntarily entered. The precedent of our court demonstrates this principle.

In *Doughty v. Beto,* 396 F.2d 128 (5th Cir.1968), the facts were quite similar to those presented here. The attorney conferred with the petitioner for only fifteen minutes prior to making the arrangements for a guilty plea and a bargained sentence. In response to the contention that the petitioner had been denied effective assistance of counsel, we stated:

The defense attorney testified, however, that Doughty appeared to be normal, knew what he was doing, was fully informed of his rights, including a jury trial, and agreed to the disposition of the case. Moreover, counsel testified that petitioner promptly admitted the facts which caused his prosecution.... When the proof shows that a defendant is fully informed of his rights, admits his guilt,

**21.** *Washington v. Strickland,* 693 F.2d 1243, 1258 (5th Cir.1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983).

**22.** *Baldwin v. Maggio,* 704 F.2d 1325, 1333 (5th Cir.1983).

**23.** *Cf. Washington v. Strickland,* 693 F.2d at 1262 (5th Cir.1982). Although the Supreme

Court has granted the state's petition for a writ of certiorari in *Washington v. Strickland, see* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332, we think it unlikely that the Court will adopt a prejudice standard less stringent than that identified by this court. *See United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816, 831 (1982), from which our prejudice test was derived.

and is relieved of the likelihood of a life sentence, we cannot condemn the efforts of an attorney as being ineffective.

396 F.2d 130.

In *Walker v. Caldwell,* 476 F.2d 213 (5th Cir.1973), we stated:

> We do not hold that every appointed counsel representing an accused who desires to plead guilty or whom he advises to plead guilty, must investigate all the facts of the case, explore all possible avenues of defense, etc., to the extent required of appointed counsel representing an accused who pleads not guilty and goes to trial.

476 F.2d at 224.

In *Carbo v. United States,* 581 F.2d 91 (5th Cir.1978), we reiterated: "When a guilty plea is entered, the only required duty of counsel in rendering reasonably effective assistance is to ascertain if the plea is entered voluntarily and knowingly." 581 F.2d at 93.

In *Jones v. Henderson,* 549 F.2d 995 (5th Cir.1977), we extensively discussed the principle that effectiveness of counsel is not to be judged by the same standard in guilty pleas as in not-guilty pleas. In *Jones,* the petitioners were brought to the courthouse to enter pleas of guilty. Upon their arrival at the courthouse, they were met for the first time by their attorney, who was appointed that morning. The attorney spent only twenty to thirty minutes advising the petitioners of their constitutional rights, the criminal statutes involved and the range of punishment. They admitted to him that they were guilty of the actions with which they were charged. Because the petitioners were anxious to plead guilty, he did not investigate the facts of the case, nor consider evidentiary motions in their behalf, nor familiarize himself with the general facts of the case. In rejecting the contention of ineffective assistance of counsel, we noted:

> [I]t is essential to recognize the difference between the duty of counsel to a defendant who enters a guilty plea and the duty to one who goes to trial. The court has frequently held that "the only required duty of counsel under the most liberal construction when a plea of guilty is entered is that counsel ... should ascertain if the plea is entered voluntarily and knowingly." [Citations omitted.]

549 F.2d 996–997. Furthermore, we quoted with approval the United States Court of Appeals for the District of Columbia in *Edwards v. United States,* 256 F.2d 707, as follows:

> It may be argued that a plea of guilty is not understandingly made when the defendant is unaware of certain technical defenses which might very well make the prosecutor's job more difficult or even impossible if he were put to his proof. However, we think "understandingly" refers merely to the *meaning* of the charge, and what acts amount to being *guilty* of the charge, and the *consequences* of pleading guilty thereto, rather than to dilatory or evidentiary defenses.

256 F.2d at 710.

Thus, in view of the precedent in our circuit, I would be more reluctant than the majority to hold that the attorney here rendered ineffective assistance to this petitioner. Since this case, however, does not turn on this point, I specially concur simply to demonstrate that the majority opinion appears to hold counsel here to a considerably higher standard than our precedent has applied. This panel, of course, does not and cannot overrule that precedent.