[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-13388

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EUGENE WRIGHT,

a.k.a. Burt,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 5:18-cr-00013-LGW-BWC-5

_____

Before NEWSOM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Eugene Wright appeals the district court's denial of his motion to withdraw his guilty plea. For the following reasons, we affirm.

I

In 2018, law enforcement began investigating a methamphetamine conspiracy in Ware County, Georgia. Through a confidential informant, the investigators learned that Wright was involved in at least two methamphetamine transactions, each for a kilogram of the illicit substance. Police then executed a search warrant at Wright's residence, where they found a ledger noting apparent drug transactions, two firearms, digital scales, plastic baggies, and a large box of Tupperware containers. Wright was arrested. And he confessed to travelling to Atlanta to obtain methamphetamine for distribution.

A grand jury returned a multi-count indictment against Wright and his alleged co-conspirators. For his part, Wright was charged with conspiring to possess with intent to distribute and to distribute 500 grams or more of methamphetamine—an offense that carried a mandatory-minimum sentence of ten years, and a maximum of life in prison. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. Wright, however, pleaded down to a lesser-included offense involving an unspecified quantity of methamphetamine. That

carried a punishment of not more than 20 years' imprisonment. *See id.* § 841(b)(1)(C).

Following a Rule 11 hearing, the district court accepted Wright's guilty plea. It found that Wright had "participated intelligently" in the process and that his offer to plead guilty was both "knowing" and "voluntary." The district court then received testimony from one of the investigating agents recounting Wright's participation in the conspiracy. And Wright admitted under oath to picking up a quantity of methamphetamine in Atlanta to bring back to South Georgia, as he had stated in his video confession. Based on this evidence, the district court found that there was a factual basis to support the guilty plea.

In Wright's presentence report, the probation officer agreed that the two transactions involving Wright amounted to "a total of approximately 2 kilograms of methamphetamine." Even so, the probation officer recommended "conservatively attribut[ing]" one kilogram of methamphetamine to Wright for sentencing purposes.

A few months later, Wright informed his counsel for the first time at his sentencing hearing that he wished to withdraw his plea. The district court instructed Wright to state his reasons, to which Wright responded: "I feel like there's not . . . evidence that's been . . . explored, and I know that I didn't do what was done. . . . I'm not guilty, and I feel like . . . I'm getting offered months that I should not be receiving." The court denied Wright's motion, explaining that Wright had "made a voluntary and knowing waiver of [his] rights to have a jury trial" and that Wright

"admitted under oath a factual basis for a plea of guilty." The court added that Wright coming in at the last minute and saying, "I change my mind; there's not enough evidence," was not a "fair and just reason for requesting the withdrawal" of his plea. *See* Fed. R. Crim. P. 11(d)(2)(B).

After hearing two hours of testimony from investigating agents, other witnesses, and Wright himself, the district court found it "clear that the drug amount that should be attributed to" Wright for sentencing was "at least" in the range of 500 grams to 1.5 kilograms of methamphetamine. *See* U.S.S.G. § 2D1.1(a)(5), (c)(5). The court proceeded to impose a within-Guidelines sentence of 103 months.

Wright appealed, raising several arguments related to the district court's denial of his motion to withdraw his guilty plea. First, he argues that the district court abused its discretion in denying his motion. Second, he faults the district court for failing to explain that he could be held responsible at sentencing for 500 grams or more of methamphetamine, even though he pleaded guilty to a lesser-included offense corresponding to an unspecified quantity of the drug. Third, Wright suggests that the court should have held an evidentiary hearing on his motion to withdraw. And fourth, he claims that the district court's denial of his motion is insufficient for us to engage in meaningful review.

## II

We begin with the basics.  Once a district court accepts a defendant's guilty plea, "[t]here is no absolute right to withdraw" from it.  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Instead, the defendant must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  We review the denial of a motion to withdraw a guilty plea for abuse of discretion and will reverse the district court's decision only if it is "arbitrary or unreasonable."  *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (quotation omitted).

When evaluating a defendant's motion to withdraw, a district court "may consider the totality of the circumstances surrounding the plea," using the four *Buckles* factors as guideposts. *Id.* (quoting *United States v. Buckles*, 843 F.2d at 469, 471–72 (11th Cir. 1988)).  The *Buckles* factors are "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* (quoting *Buckles*, 843 F.2d at 472).  If an appellant does not satisfy the first two factors, we need not thoroughly analyze the others. *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

## A

The district court did not abuse its discretion here.  Starting with the first *Buckles* factor, Wright plainly had the close assistance

of counsel. For one thing, he signed a plea agreement confirming that he "had the benefit of legal counsel in negotiating" the plea. Doc. 284 at 7. The plea also states that Wright was "completely satisfied" with his counsel's assistance and "believe[d] that his attorney ha[d] represented him faithfully, skillfully, and diligently." *Id.* Later, Wright testified to the same effect under oath. He confirmed that he and his counsel had the opportunity to talk about his case, review the indictment, discuss the Sentencing Guidelines, and go over the terms of his plea agreement together. Further, Wright averred that he had no complaints whatsoever regarding his counsel's performance. There is a "strong presumption" that these statements made under oath were all true. *Medlock*, 12 F.3d at 187. And Wright fails to rebut that presumption on appeal.[1] Thus, the district court did not err in finding that Wright "had the services of a competent defense lawyer who ha[d] gone over all the requisite pleadings and concepts with him."

The second *Buckles* factor favors the government as well. Before accepting Wright's plea, the district court conducted an extensive Rule 11 inquiry to ensure that the plea was both knowing and voluntary. *See* Fed. R. Crim. P. 11; *United States v. Stitzer*, 785

---

[1] To the extent Wright contends that the district court should have appointed new counsel to argue his eleventh-hour motion to withdraw, the district court was not required to do so *sua sponte*. As stated, Wright had previously confirmed under oath that he was satisfied with his attorney's representation. And even on appeal, Wright doesn't suggest that he lacked the close assistance of counsel throughout the plea-bargaining stage. *See Brehm*, 442 F.3d at 1298.

F.2d 1506, 1513 (11th Cir. 1986).  During that colloquy, Wright testified that he had no mental disabilities and had held down several responsible positions as a mechanic.  He confirmed that he understood the government's burden of proof, as well as his right to plead not guilty.  And he said he knew that by pleading guilty, he was waiving various constitutional rights.  After that, the district court walked through the elements of the lesser-included offense to which Wright pleaded guilty.  It described the maximum penalties available for that crime.  It explained the general operation of the Sentencing Guidelines and how Wright would be sentenced.  And it summarized the terms of the plea agreement.  Throughout the process, Wright consistently testified that he understood, and he confirmed that he had read the plea agreement before signing it.  The district court found it "clear" from watching Wright and listening to his answers that he had "participated intelligently" in entering his guilty plea.  We see no reason to question that assessment. *See United States v. Mosley*, 173 F.3d 1318, 1323 (11th Cir. 1999) ("These matters are better committed to the good judgment of the district judge, who observes the defendant's demeanor, life experience, and intelligence.").  Indeed, Wright agreed that his plea was "knowing" and "voluntary."  App'x at 54.

Eventually, though, Wright had second thoughts.  He moved to withdraw his plea on the grounds that he wasn't guilty, and he believed his recommended sentence was too high.  Neither ground suffices to show that the district court abused its discretion in refusing to allow Wright to withdraw.  As we've held in the past,

a "mere declaration of innocence does not entitle a defendant to withdraw his guilty plea." *Buckles*, 843 F.2d at 472. And that's particularly true in this case, where Wright "admitted factual guilt under oath at his guilty plea hearing." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

As to Wright's second basis, he may have anticipated a lower sentence. But that doesn't undermine the validity of his plea. *See, e.g.*, *Gonzalez-Mercado*, 808 F.2d at 801. In fact, the district court advised Wright during the plea hearing that it would still have to calculate the advisory guideline range and that the sentence it ultimately imposed may differ from any estimate that Wright had received. In response, Wright said he understood and confirmed that nobody had promised him an exact sentence. Beyond that warning, Wright's plea agreement also specifically provided that Wright wouldn't be able to withdraw his plea if his sentence turned out to be "more severe" than expected. Doc. 284 at 2. He cannot turn back on that stipulation now.

Because Wright had close assistance of counsel and made no showing that his guilty plea was unknowing or involuntary, we need not give "considerable weight" or "particular attention" to the factors of judicial efficiency and prejudice to the government. *Gonzalez-Mercado*, 808 F.2d at 801. But "we note that the district court's decision plainly served the goal of conserving judicial resources, as it obviated the need for a full trial on the merits." *United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003). And we reiterate that a "district court need not find prejudice to the

government before it can deny a defendant's motion to withdraw." *Buckles*, 843 F.2d at 474.  Add it all up, and it is clear that the district court was within its discretion to conclude that Wright didn't present a "fair and just reason" for withdrawing his plea. Fed. R. Crim. P. 11(d)(2)(B).

**B**

Nevertheless, Wright morphs his argument on appeal, asserting that he "did not understand that he could still be sentenced based on a drug quantity of 500 grams or more."  Br. of Appellant at 37.  According to Wright, that alleged misunderstanding as to the relevant conduct he could be held responsible for at sentencing undermines the knowing and voluntary nature of his plea.  This argument was not raised below—and certainly not with sufficient clarity—so our review is only for plain error. *See United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006).  Thus, we may reverse only if "(1) an error occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Duncan*, 400 F.3d 1297, 1301 (11th Cir. 2005). Wright "has the burden of establishing each of the four requirements." *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021).

He hasn't met that burden here.  First, Wright's purported lack of understanding is belied by the record.  His plea agreement explicitly noted that the application of the Sentencing Guidelines would be "based on <u>all</u> of [his] relevant conduct, pursuant to Section 1B1.3 of the Sentencing Guidelines, not just the conduct

underlying the particular Count to which" he pleaded guilty. Doc. 284 at 3 (emphasis in original); *see* U.S.S.G. § 1B1.3; *United States v. Delgado*, 981 F.3d 889, 900 n.7 (11th Cir. 2020). Wright confirmed under oath that he had read the agreement containing this provision. In signing the agreement, Wright likewise "affirm[ed] that [he] had carefully reviewed every part of it with [his] attorney and that [he] understood its contents." *United States v. Camacho*, 233 F.3d 1308, 1319 (11th Cir. 2000). Further, when the district court asked Wright at the plea hearing whether he had any questions regarding the operation of the Guidelines, he said he did not.

Second, even if we ignored this record evidence refuting Wright's claimed understanding on appeal, the Constitution "permits a court to accept a guilty plea . . . despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630–31 (2002) (collecting cases). Applying this principle in the sentencing context, we've held that so long as a defendant "understood the length of time he might possibly receive"—that is, the range of potential sentences—he is deemed "fully aware of his plea's consequences." *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Unit B Oct. 1981);[2] *see also Brady v. United States*, 397 U.S. 742, 757 (1970) (explaining that a plea is valid even if a defendant misapprehends "the likely penalties"). In this case, the district judge advised Wright on the range of penalties

---

[2] Decisions by the Unit B panel of the former Fifth Circuit are binding on this Court. *Ruiz v. Wing*, 991 F.3d 1130, 1141 n.8 (11th Cir. 2021).

available, including the maximum 20-year prison term, and she explained the role of the Sentencing Guidelines in generating an advisory range for the penalty that would be imposed. "With respect to the Sentencing Guidelines, that is all we require the district judge to do." *Mosley*, 173 F.3d at 1328. The failure to specifically remind Wright that all relevant conduct could be considered in calculating his guideline range—as his plea agreement stated—didn't affect the validity of Wright's plea; nor did it violate Rule 11. *See United States v. Bozza*, 132 F.3d 659, 661–62 (11th Cir. 1998); *United States v. Blalock*, 321 F.3d 686, 689 (7th Cir. 2003) ("Subsumed within the admonition that the sentencing guidelines will govern the fashioning of the actual sentence is the fact that relevant conduct beyond the offense of conviction will be considered, as required by the guidelines.").

Third, "to show plain error, [Wright] must point to some precedent from the Supreme Court or our Court 'directly resolving' the issue." *United States v. Harris*, 7 F.4th 1276, 1298 (11th Cir. 2021) (citation omitted). Yet Wright doesn't identify any case holding that a district court must specifically inform the defendant that he can still be held responsible for all relevant conduct when he pleads guilty to a lesser-included offense. Therefore, even if Wright could show error, he hasn't carried his burden of showing that the alleged error was plain.

## C

Wright next insists that the district court should have held an evidentiary hearing regarding his motion to withdraw his plea.

Even assuming Wright has preserved this claim, our review is only for an abuse of discretion. *See Brehm*, 442 F.3d at 1298.

And we see no such abuse. Particularly in light of the extensive inquiries made during the plea colloquy, the district court wasn't required to hold an evidentiary hearing to consider the matter anew. *See id.* (citing *Stitzer*, 785 F.2d at 1514). As explained above, the district court correctly determined at the Rule 11 hearing that Wright's plea was both knowing and voluntary. Then, based on a lead case agent's testimony describing his investigation of the methamphetamine conspiracy and Wright's confession—as well as Wright's admissions under oath—the district court reasonably found that there was a factual basis for the plea. *See* Fed. R. Crim. P. 11(b)(3); *Rogers*, 848 F.2d at 168. The district court was well within its discretion to rely on Wright's sworn admission of guilt and reject his later attempts to contradict that testimony with conclusory assertions of innocence. *See Buckles*, 843 F.2d at 472; *Stitzer*, 785 F.2d at 1514 n.4.

## D

Finally, Wright contends that the district court's ruling on his motion to withdraw his plea doesn't provide a meaningful record for this Court to review. We disagree.

When denying a defendant's motion to withdraw, a district court "need only set forth enough to demonstrate that it considered the parties' arguments and had a reasoned basis for exercising its decisionmaking authority." *See United States v. Green*, 981 F.3d

945, 953 (11th Cir. 2020) (alterations adopted) (quotation omitted); *United States v. Johnson*, 89 F.3d 778, 784–85 (11th Cir. 1996). Here, the record is adequate for appellate review because the district court fully addressed Wright's arguments in his motion. *See United States v. Potts*, 997 F.3d 1142, 1145–47 (11th Cir. 2021). Again, Wright merely challenged the factual basis for his plea, and the district court, while referencing the Rule 11 hearing, denied the motion based on Wright's sworn admissions from that proceeding. Although the explanation was short, it was not "bare bones," as the district court cited to Rule 11(d)(2)(B) and its findings in the record. *See United States v. Stevens*, 997 F.3d 1307, 1318 (11th Cir. 2021). The court's explanation was thus more than sufficient for us to engage in meaningful review. *See Gonzalez-Mercado*, 808 F.2d at 798–801.

In response, Wright argues that the district court's discussion was particularly problematic because it "failed to make adequate findings on the *Buckles* factors." Br. of Appellant at 27. But even setting aside the fact that Wright's argument below didn't relate to those factors, the district judge explicitly referenced the plea hearing at which she accepted Wright's "voluntary and knowing" guilty plea. As part of those findings, the district judge had also noted that Wright had close assistance from competent counsel. She didn't need to reexplain her findings in detail. *See Potts*, 997 F.3d at 1146; *see also United States v. Tobin*, 676 F.3d 1264, 1309 (11th Cir. 2012) (explaining that meaningful appellate review is possible where the district court's "decision is based on clearly

identifiable evidence" (quotation omitted)).  Nor was the district judge required—at any point—to address the remaining *Buckles* factors.  *See Johnson*, 89 F.3d at 784–85; *Gonzalez-Mercado*, 808 F.2d at 801.

★  ★  ★

We **AFFIRM** Wright's conviction.